# FELKER v. TURPIN, WARDEN

No. 95–8836 (A–890). Argued June 3, 1996—Decided June 28, 1996

REHNQUIST, C. J., delivered the opinion for a unanimous Court. STEVENS, J., filed a concurring opinion, in which SOUTER and BREYER, JJ., joined, *post,* p. 665. SOUTER, J., filed a concurring opinion, in which STEVENS and BREYER, JJ., joined, *post,* p. 666.

*Henry P. Monaghan* argued the cause for petitioner. With him on the brief were *Stephen C. Bayliss, Mary Elizabeth Wells,* and *Mark Evan Olive.*

*Susan V. Boleyn,* Senior Assistant Attorney General of Georgia, argued the cause for respondent. With her on the briefs were *Michael J. Bowers,* Attorney General, *Mary Beth Westmoreland,* Deputy Attorney General, *Paula K. Smith,* Senior Assistant Attorney General, and *Paige Reese Whitaker,* Assistant Attorney General.

*Solicitor General Days* argued the cause for the United States as *amicus curiae.* With him on the brief were *Acting Assistant Attorney General Keeney, Deputy Solicitor General Dreeben, James A. Feldman, Malcolm L. Stewart, Robert J. Erickson,* and *David S. Kris.**

---

*Briefs of *amici curiae* urging affirmance were filed for the Washington Legal Foundation et al. by *Ronald D. Maines, Paul G. Cassell, Daniel J. Popeo,* and *Paul D. Kamenar;* and for *Senator Orrin G. Hatch, pro se,* et al.

Briefs of *amici curiae* were filed for the State of Alabama et al. by *Betty D. Montgomery,* Attorney General of Ohio, *Jeffrey S. Sutton,* State Solicitor, and *Stuart A. Cole, Stuart W. Harris,* and *Jon C. Walden,* Assistant Attorneys General, *Dan Morales,* Attorney General of Texas, *Jorge Vega,* First Assistant Attorney General, *Drew T. Durham,* Deputy Attorney General, and *Margaret Portman Griffey, John Jacks,* and *Dana E. Parker,* Assistant Attorneys General, *Daniel E. Lungren,* Attorney General of California, *George Williamson,* Chief Assistant Attorney General, *Donald E. De Nicola,* Supervising Deputy Attorney General, and *Dane R. Gillette,* Senior Assistant Attorney General, *Jeff Sessions,* Attorney General of Alabama, *Grant Woods,* Attorney General of Arizona, *Gale A. Norton,* Attorney General of Colorado, *John M. Bailey,* Chief State's Attorney of Connecticut, *M. Jane Brady,* Attorney General of Delaware, *Robert A. Butterworth,* Attorney General of Florida, *Margery S. Bronster,* Attorney General of Hawaii, *Allan G. Lance,* Attorney General of Idaho, *Jim Ryan,* Attorney General of Illinois, *A. B. Chandler III,* Attorney General of Kentucky, *Scott Harshbarger,* Attorney General of Massachusetts, *Mike Moore,* Attorney General of Mississippi, *Jeremiah W. (Jay) Nixon,*

654

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

Title I of the Antiterrorism and Effective Death Penalty Act of 1996 (Act) works substantial changes to chapter 153 of Title 28 of the United States Code, which authorizes federal courts to grant the writ of habeas corpus. Pub. L. 104–132, 110 Stat. 1217. We hold that the Act does not preclude this Court from entertaining an application for habeas corpus relief, although it does affect the standards governing the granting of such relief. We also conclude that the availability of such relief in this Court obviates any claim by petitioner under the Exceptions Clause of Article III, § 2, of the Constitution, and that the operative provisions of the Act do not violate the Suspension Clause of the Constitution, Art. I, § 9.

I

On a night in 1976, petitioner approached Jane W. in his car as she got out of hers. Claiming to be lost and looking for a party nearby, he used a series of deceptions to induce Jane to accompany him to his trailer home in town. Peti-

Attorney General of Missouri, *Joseph P. Mazurek,* Attorney General of Montana, *Don Stenberg,* Attorney General of Nebraska, *Frankie Sue Del Papa,* Attorney General of Nevada, *Deborah T. Poritz,* Attorney General of New Jersey, *Dennis C. Vacco,* Attorney General of New York, *Michael F. Easley,* Attorney General of North Carolina, *W. A. Drew Edmondson,* Attorney General of Oklahoma, *Theodore R. Kolongoski,* Attorney General of Oregon, *Thomas W. Corbett, Jr.,* Attorney General of Pennsylvania, *Jeffrey B. Pine,* Attorney General of Rhode Island, *Mark W. Barnett,* Attorney General of South Dakota, *Charles W. Burson,* Attorney General of Tennessee, *Jan Graham,* Attorney General of Utah, *Christine O. Gregoire,* Attorney General of Washington, *James E. Doyle,* Attorney General of Wisconsin, and *William U. Hill,* Attorney General of Wyoming; for the American Civil Liberties Union by *Steven R. Shapiro;* for the Criminal Justice Legal Foundation et al. by *Kent S. Scheidegger;* and for the National District Attorneys Association by *Lynn Abraham* and *Ronald Eisenberg.*

tioner forcibly subdued her, raped her, and sodomized her. Jane pleaded with petitioner to let her go, but he said he could not because she would notify the police. She escaped later, when petitioner fell asleep. Jane notified the police, and petitioner was eventually convicted of aggravated sodomy and sentenced to 12 years' imprisonment.

Petitioner was paroled four years later. On November 23, 1981, he met Joy Ludlam, a cocktail waitress, at the lounge where she worked. She was interested in changing jobs, and petitioner used a series of deceptions involving offering her a job at "The Leather Shoppe," a business he owned, to induce her to visit him the next day. The last time Joy was seen alive was the evening of the next day. Her dead body was discovered two weeks later in a creek. Forensic analysis established that she had been beaten, raped, and sodomized, and that she had been strangled to death before being left in the creek. Investigators discovered hair resembling petitioner's on Joy's body and clothes, hair resembling Joy's in petitioner's bedroom, and clothing fibers like those in Joy's coat in the hatchback of petitioner's car. One of petitioner's neighbors reported seeing Joy's car at petitioner's house the day she disappeared.

A jury convicted petitioner of murder, rape, aggravated sodomy, and false imprisonment. Petitioner was sentenced to death on the murder charge. The Georgia Supreme Court affirmed petitioner's conviction and death sentence, *Felker* v. *State*, 252 Ga. 351, 314 S. E. 2d 621, and we denied certiorari, 469 U. S. 873 (1984). A state trial court denied collateral relief, the Georgia Supreme Court declined to issue a certificate of probable cause to appeal the denial, and we again denied certiorari. *Felker* v. *Zant*, 502 U. S. 1064 (1992).

Petitioner then filed a petition for a writ of habeas corpus in the United States District Court for the Middle District of Georgia, alleging that (1) the State's evidence was insuffi-

cient to convict him; (2) the State withheld exculpatory evidence, in violation of *Brady* v. *Maryland*, 373 U. S. 83 (1963); (3) petitioner's counsel rendered ineffective assistance at sentencing; (4) the State improperly used hypnosis to refresh a witness' memory; and (5) the State violated double jeopardy and collateral estoppel principles by using petitioner's crime against Jane W. as evidence at petitioner's trial for crimes against Joy Ludlam. The District Court denied the petition. The United States Court of Appeals for the Eleventh Circuit affirmed, 52 F. 3d 907, extended on denial of petition for rehearing, 62 F. 3d 342 (1995), and we denied certiorari, 516 U. S. 1133 (1996).

The State scheduled petitioner's execution for the period May 2–9, 1996. On April 29, 1996, petitioner filed a second petition for state collateral relief. The state trial court denied this petition on May 1, and the Georgia Supreme Court denied certiorari on May 2.

On April 24, 1996, the President signed the Act into law. Title I of this Act contained a series of amendments to existing federal habeas corpus law. The provisions of the Act pertinent to this case concern second or successive habeas corpus applications by state prisoners. Section 106(b) specifies the conditions under which claims in second or successive applications must be dismissed, amending 28 U. S. C. § 2244(b) to read:

> "(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.
>
> "(2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—
>
> "(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

"(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

"(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense."

Title 28 U. S. C. § 2244(b)(3) (1994 ed., Supp. II) creates a "gatekeeping" mechanism for the consideration of second or successive applications in district court. The prospective applicant must file in the court of appeals a motion for leave to file a second or successive habeas application in the district court. § 2244(b)(3)(A). A three-judge panel has 30 days to determine whether "the application makes a prima facie showing that the application satisfies the requirements of" § 2244(b). § 2244(b)(3)(C); see §§ 2244(b)(3)(B), (D). Section 2244(b)(3)(E) specifies that "[t]he grant or denial of an authorization by a court of appeals to file a second or successive application shall not be appealable and shall not be the subject of a petition for rehearing or for a writ of certiorari."

On May 2, 1996, petitioner filed in the United States Court of Appeals for the Eleventh Circuit a motion for stay of execution and a motion for leave to file a second or successive federal habeas corpus petition under § 2254. Petitioner sought to raise two claims in his second petition, the first being that the state trial court violated due process by equating guilt "beyond a reasonable doubt" with "moral certainty" of guilt in *voir dire* and jury instructions. See *Cage* v. *Louisiana*, 498 U. S. 39 (1990) *(per curiam).* He also alleged that qualified experts, reviewing the forensic evidence after his conviction, had established that Joy must have died during a period when petitioner was under police surveillance for Joy's disappearance and thus had a valid

alibi. He claimed that the testimony of the State's forensic expert at trial was suspect because he is not a licensed physician, and that the new expert testimony so discredited the State's testimony at trial that petitioner had a colorable claim of factual innocence.

The Court of Appeals denied both motions the day they were filed, concluding that petitioner's claims had not been presented in his first habeas petition, that they did not meet the standards of § 2244(b)(2), and that they would not have satisfied pre-Act standards for obtaining review on the merits of second or successive claims. 83 F. 3d 1303 (CA11 1996). Petitioner filed in this Court a pleading styled a "Petition for Writ of Habeas Corpus, for Appellate or Certiorari Review of the Decision of the United States Circuit Court for the Eleventh Circuit, and for Stay of Execution." On May 3, we granted petitioner's stay application and petition for certiorari. We ordered briefing on the extent to which the provisions of Title I of the Act apply to a petition for habeas corpus filed in this Court, whether application of the Act suspended the writ of habeas corpus in this case, and whether Title I of the Act, especially the provision to be codified at § 2244(b)(3)(E), constitutes an unconstitutional restriction on the jurisdiction of this Court. 517 U. S. 1182 (1996).

## II

We first consider to what extent the provisions of Title I of the Act apply to petitions for habeas corpus filed as original matters in this Court pursuant to 28 U. S. C. §§ 2241 and 2254. We conclude that although the Act does impose new conditions on our authority to grant relief, it does not deprive this Court of jurisdiction to entertain original habeas petitions.

## A

Section 2244(b)(3)(E) prevents this Court from reviewing a court of appeals order denying leave to file a second ha-

beas petition by appeal or by writ of certiorari. More than a century ago, we considered whether a statute barring review by appeal of the judgment of a circuit court in a habeas case also deprived this Court of power to entertain an original habeas petition. *Ex parte Yerger*, 8 Wall. 85 (1869). We consider the same question here with respect to § 2244(b)(3)(E).

*Yerger*'s holding is best understood in the light of the availability of habeas corpus review at that time. Section 14 of the Judiciary Act of 1789 authorized all federal courts, including this Court, to grant the writ of habeas corpus when prisoners were "in custody, under or by colour of the authority of the United States, or [were] committed for trial before some court of the same." Act of Sept. 24, 1789, ch. 20, § 14, 1 Stat. 82.[1] Congress greatly expanded the scope of federal habeas corpus in 1867, authorizing federal courts to grant the writ, "in addition to the authority already conferred by law," "in all cases where any person may be restrained of his or her liberty in violation of the constitution, or of any treaty or law of the United States." Act of Feb. 5, 1867, ch. 28, 14 Stat. 385.[2] Before the Act of 1867, the only instances in which a federal court could issue the writ to produce a state prisoner were if the prisoner was "necessary to be brought into court to testify," Act of Sept. 24, 1789, ch. 20, § 14, 1 Stat. 82, was "committed . . . for any act done . . . in pursuance of a law of the United States," Act of Mar. 2, 1833, ch. 57, § 7, 4 Stat. 634–635, or was a "subjec[t] or citize[n] of a foreign

---

[1] Section 14 is the direct ancestor of 28 U. S. C. § 2241, subsection (a) of which now states in pertinent part: "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions."

[2] This language from the 1867 Act is the direct ancestor of § 2241(c)(3), which states: "The writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States."

State, and domiciled therein," and held under state law, Act of Aug. 29, 1842, ch. 257, 5 Stat. 539–540.

The Act of 1867 also expanded our statutory appellate jurisdiction to authorize appeals to this Court from the final decision of any circuit court on a habeas petition. 14 Stat. 386. This enactment changed the result of *Barry* v. *Mercein*, 5 How. 103 (1847), in which we had held that the Judiciary Act of 1789 did not authorize this Court to conduct appellate review of circuit court habeas decisions. However, in 1868, Congress revoked the appellate jurisdiction it had given in 1867, repealing "so much of the [Act of 1867] as authorizes an appeal from the judgment of the circuit court to the Supreme Court of the United States." Act of Mar. 27, 1868, ch. 34, § 2, 15 Stat. 44.

In *Yerger*, we considered whether the Act of 1868 deprived us not only of power to hear an appeal from an inferior court's decision on a habeas petition, but also of power to entertain a habeas petition to this Court under § 14 of the Act of 1789. We concluded that the 1868 Act did not affect our power to entertain such habeas petitions. We explained that the 1868 Act's text addressed only jurisdiction over appeals conferred under the Act of 1867, not habeas jurisdiction conferred under the Acts of 1789 and 1867. We rejected the suggestion that the Act of 1867 had repealed our habeas power by implication. *Yerger*, 8 Wall., at 105. Repeals by implication are not favored, we said, and the continued exercise of original habeas jurisdiction was not "repugnant" to a prohibition on review by appeal of circuit court habeas judgments. *Ibid.*

Turning to the present case, we conclude that Title I of the Act has not repealed our authority to entertain original habeas petitions, for reasons similar to those stated in *Yerger.* No provision of Title I mentions our authority to entertain original habeas petitions; in contrast, § 103 amends the Federal Rules of Appellate Procedure to bar consider-

ation of original habeas petitions in the courts of appeals.[3] Although § 2244(b)(3)(E) precludes us from reviewing, by appeal or petition for certiorari, a judgment on an application for leave to file a second habeas petition in district court, it makes no mention of our authority to hear habeas petitions filed as original matters in this Court. As we declined to find a repeal of § 14 of the Judiciary Act of 1789 as applied to this Court by implication then, we decline to find a similar repeal of § 2241 of Title 28—its descendant, n. 1, *supra*—by implication now.

This conclusion obviates one of the constitutional challenges raised. The critical language of Article III, § 2, of the Constitution provides that, apart from several classes of cases specifically enumerated in this Court's original jurisdiction, "[i]n all the other Cases . . . the supreme Court shall have appellate Jurisdiction, both as to Law and Fact, with such Exceptions, and under such Regulations as the Congress shall make." Previous decisions construing this clause have said that while our appellate powers "are given by the constitution," "they are limited and regulated by the [Judiciary Act of 1789], and by such other acts as have been passed on the subject." *Durousseau* v. *United States*, 6 Cranch 307, 314 (1810); see also *United States* v. *More*, 3 Cranch 159, 172–173 (1805). The Act does remove our authority to entertain an appeal or a petition for a writ of certiorari to review a decision of a court of appeals exercising its "gatekeeping" function over a second petition. But since it does not repeal our authority to entertain a petition for

---

[3] Section 103 of the Act amends Federal Rule of Appellate Procedure 22(a) to read: "An application for a writ of habeas corpus shall be made to the appropriate district court. If application is made to a circuit judge, the application shall be transferred to the appropriate district court. If an application is made to or transferred to the district court and denied, renewal of the application before a circuit judge shall not be permitted. The applicant may, pursuant to section 2253 of title 28, United States Code, appeal to the appropriate court of appeals from the order of the district court denying the writ."

habeas corpus, there can be no plausible argument that the Act has deprived this Court of appellate jurisdiction in violation of Article III, § 2.

B

We consider next how Title I affects the requirements a state prisoner must satisfy to show he is entitled to a writ of habeas corpus from this Court. Title I of the Act has changed the standards governing our consideration of habeas petitions by imposing new requirements for the granting of relief to state prisoners. Our authority to grant habeas relief to state prisoners is limited by § 2254, which specifies the conditions under which such relief may be granted to "a person in custody pursuant to the judgment of a State court."[4] § 2254(a). Several sections of the Act impose new requirements for the granting of relief under this section, and they therefore inform our authority to grant such relief as well.

Section 2244(b) addresses second or successive habeas petitions. Section 2244(b)(3)'s "gatekeeping" system for second petitions does not apply to our consideration of habeas petitions because it applies to applications "filed in the district court." § 2244(b)(3)(A). There is no such limitation, however, on the restrictions on repetitive and new claims imposed by §§ 2244(b)(1) and (2). These restrictions apply without qualification to any "second or successive habeas corpus application under section 2254." §§ 2244(b)(1), (2).

---

[4] As originally enacted in 1948, 28 U. S. C. § 2254 specified that "[a]n application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U. S. C. § 2254 (1946 ed., Supp. III). The reviser's notes, citing *Ex parte Hawk*, 321 U. S. 114 (1944) *(per curiam)*, indicated that "[t]his new section is declaratory of existing law as affirmed by the Supreme Court." Reviser's Note following 28 U. S. C. § 2254, p. 1109 (1946 ed., Supp. III). *Hawk* was one of a series of opinions in which we applied the exhaustion requirement first announced in *Ex parte Royall*, 117 U. S. 241 (1886), to deny relief to applicants seeking writs of habeas corpus from this Court.

Whether or not we are bound by these restrictions, they certainly inform our consideration of original habeas petitions.

## III

Next, we consider whether the Act suspends the writ of habeas corpus in violation of Article I, § 9, clause 2, of the Constitution. This Clause provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."

The writ of habeas corpus known to the Framers was quite different from that which exists today. As we explained previously, the first Congress made the writ of habeas corpus available only to prisoners confined under the authority of the United States, not under state authority. *Supra*, at 659–660; see *Ex parte Dorr*, 3 How. 103 (1844). The class of judicial actions reviewable by the writ was more restricted as well. In *Ex parte Watkins*, 3 Pet. 193 (1830), we denied a petition for a writ of habeas corpus from a prisoner "detained in prison by virtue of the judgment of a court, which court possesses general and final jurisdiction in criminal cases." *Id.*, at 202. Reviewing the English common law which informed American courts' understanding of the scope of the writ, we held that "[t]he judgment of the circuit court in a criminal case is of itself evidence of its own legality," and that we could not "usurp that power by the instrumentality of the writ of habeas corpus." *Id.*, at 207.

It was not until 1867 that Congress made the writ generally available in "all cases where any person may be restrained of his or her liberty in violation of the constitution, or of any treaty or law of the United States." *Supra*, at 659. And it was not until well into this century that this Court interpreted that provision to allow a final judgment of conviction in a state court to be collaterally attacked on habeas. See, *e. g., Waley* v. *Johnston*, 316 U. S. 101 (1942) *(per curiam); Brown* v. *Allen*, 344 U. S. 443 (1953). But we assume,

for purposes of decision here, that the Suspension Clause of the Constitution refers to the writ as it exists today, rather than as it existed in 1789. See *Swain* v. *Pressley,* 430 U. S. 372 (1977); *id.,* at 384 (Burger, C. J., concurring in part and concurring in judgment).

The Act requires a habeas petitioner to obtain leave from the court of appeals before filing a second habeas petition in the district court. But this requirement simply transfers from the district court to the court of appeals a screening function which would previously have been performed by the district court as required by 28 U. S. C. § 2254 Rule 9(b). The Act also codifies some of the pre-existing limits on successive petitions, and further restricts the availability of relief to habeas petitioners. But we have long recognized that "the power to award the writ by any of the courts of the United States, must be given by written law," *Ex parte Bollman,* 4 Cranch 75, 94 (1807), and we have likewise recognized that judgments about the proper scope of the writ are "normally for Congress to make." *Lonchar* v. *Thomas,* 517 U. S. 314, 323 (1996).

The new restrictions on successive petitions constitute a modified res judicata rule, a restraint on what is called in habeas corpus practice "abuse of the writ." In *McCleskey* v. *Zant,* 499 U. S. 467 (1991), we said that "the doctrine of abuse of the writ refers to a complex and evolving body of equitable principles informed and controlled by historical usage, statutory developments, and judicial decisions." *Id.,* at 489. The added restrictions which the Act places on second habeas petitions are well within the compass of this evolutionary process, and we hold that they do not amount to a "suspension" of the writ contrary to Article I, § 9.

## IV

We have answered the questions presented by the petition for certiorari in this case, and we now dispose of the petition

for an original writ of habeas corpus. Our Rule 20.4(a) delineates the standards under which we grant such writs:

> "A petition seeking the issuance of a writ of habeas corpus shall comply with the requirements of 28 U. S. C. §§ 2241 and 2242, and in particular with the provision in the last paragraph of § 2242 requiring a statement of the 'reasons for not making application to the district court of the district in which the applicant is held.' If the relief sought is from the judgment of a state court, the petition shall set forth specifically how and wherein the petitioner has exhausted available remedies in the state courts or otherwise comes within the provisions of 28 U. S. C. § 2254(b). To justify the granting of a writ of habeas corpus, the petitioner must show exceptional circumstances warranting the exercise of the Court's discretionary powers and must show that adequate relief cannot be obtained in any other form or from any other court. These writs are rarely granted."

Reviewing petitioner's claims here, they do not materially differ from numerous other claims made by successive habeas petitioners which we have had occasion to review on stay applications to this Court. Neither of them satisfies the requirements of the relevant provisions of the Act, let alone the requirement that there be "exceptional circumstances" justifying the issuance of the writ.

\* \* \*

The petition for writ of certiorari is dismissed for want of jurisdiction. The petition for an original writ of habeas corpus is denied.

*It is so ordered.*

JUSTICE STEVENS, with whom JUSTICE SOUTER and JUSTICE BREYER join, concurring.

While I join the Court's opinion, I believe its response to the argument that the Act has deprived this Court of appel-

late jurisdiction in violation of Article III, § 2, is incomplete. I therefore add this brief comment.

As the Court correctly concludes, the Act does not divest this Court of jurisdiction to grant petitioner relief by issuing a writ of habeas corpus. It does, however, except the category of orders entered by the courts of appeals pursuant to 28 U. S. C. § 2244(b)(3) (1994 ed., Supp. II) from this Court's statutory jurisdiction to review cases in the courts of appeals pursuant to 28 U. S. C. § 1254(1). The Act does not purport to limit our jurisdiction under that section to review interlocutory orders in such cases, to limit our jurisdiction under § 1254(2), or to limit our jurisdiction under the All Writs Act, 28 U. S. C. § 1651.

Accordingly, there are at least three reasons for rejecting petitioner's argument that the limited exception violates Article III, § 2. First, if we retain jurisdiction to review the gatekeeping orders pursuant to the All Writs Act—and petitioner has not suggested otherwise—such orders are not immune from direct review. Second, by entering an appropriate interlocutory order, a court of appeals may provide this Court with an opportunity to review its proposed disposition of a motion for leave to file a second or successive habeas application. Third, in the exercise of our habeas corpus jurisdiction, we may consider earlier gatekeeping orders entered by the court of appeals to inform our judgments and provide the parties with the functional equivalent of direct review. In this case the Court correctly denies the writ of habeas corpus because petitioner's claims do not satisfy the requirements of our pre-Act jurisprudence or the requirements of the Act, including the standards governing the court of appeals' gatekeeping function.

JUSTICE SOUTER, with whom JUSTICE STEVENS and JUSTICE BREYER join, concurring.

I join the Court's opinion. The Court holds today that the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104–132, 110 Stat. 1217, precludes our review, by "certio-

rari" or by "appeal," over the courts of appeals's "gate-keeper" determinations. See 28 U. S. C. § 2244(b)(3)(E) (1994 ed., Supp. II). The statute's text does not necessarily foreclose all of our appellate jurisdiction, see, e. g., 28 U. S. C. § 1254(2) (certified questions from courts of appeals); § 1651(a) (authority to issue appropriate writs in aid of another exercise of appellate jurisdiction); this Court's Rule 20.3 (procedure for petitions for extraordinary writs), nor has Congress repealed our authority to entertain original petitions for writs of habeas corpus.[1]  Because petitioner sought only a writ of certiorari (which Congress has foreclosed) and a writ of habeas corpus (which, even applying the traditional criteria, we would choose to deny, see ante, at 664–665), I have no difficulty with the conclusion that the statute is not on its face, or as applied here, unconstitutional.  I write only to add that if it should later turn out that statutory avenues other than certiorari for reviewing a gatekeeping determination were closed, the question whether the statute exceeded Congress's Exceptions Clause power would be open.[2]  The question could arise if the courts of appeals adopted divergent interpretations of the gatekeeper standard.

---

[1] Such a petition is commonly understood to be "original" in the sense of being filed in the first instance in this Court, but nonetheless for constitutional purposes an exercise of this Court's appellate (rather than original) jurisdiction.  See Oaks, The "Original" Writ of Habeas Corpus in the Supreme Court, 1962 S. Ct. Rev. 153.

[2] See, e. g., Hart, The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic, 66 Harv. L. Rev. 1362, 1364–1365 (1953) (articulating "essential functions" limitation on the Exceptions Clause); Ratner, Congressional Power Over the Appellate Jurisdiction of the Supreme Court, 109 U. Pa. L. Rev. 157, 160–167 (1960) (same); Gunther, Congressional Power to Curtail Federal Court Jurisdiction: An Opinionated Guide to the Ongoing Debate, 36 Stan. L. Rev. 895, 896–899 (1984) (taking a broad view of Congress's authority, but noting ongoing scholarly debate); Caminker, Why Must Inferior Courts Obey Superior Court Precedents?, 46 Stan. L. Rev. 817, 828–837 (1994) (noting that the "essential functions" argument may find textual support, with respect to the lower federal courts, in the requirement of Art. I, § 8, cl. 9, that such courts be "inferior to the supreme Court").