**Pedro MEDINA, Petitioner,**

v.

**Harry K. SINGLETARY, Jr., Respondent.**

No. 97–270–CIV–ORL–18.

United States District Court,
M.D. Florida,
Orlando Division.

March 24, 1997.

Gail E. Anderson, Judith J. Dougherty, Michael J. Minerva, Office of the Capital Collateral Representative, Tallahassee, FL, for Pedro Medina.

Margene Ann Roper, Attorney General's Office, Dept. of Legal Affairs, Daytona Beach, FL, Barbara C. Davis, Whited and Davis, Daytona Beach, FL, for Harry K. Singletary, Jr.

### ORDER

G. KENDALL SHARP, District Judge.

Petitioner initiated this action for emergency habeas corpus relief pursuant to 28 U.S.C. § 2254 or, in the alternative, for relief in his prior habeas petition under Federal Rule of Civil Procedure 60(b)(6).

### Procedural History

Petitioner is a Florida inmate who was convicted of first degree murder and sentenced to death. Petitioner previously filed in this Court a Petition for Writ of Habeas Corpus on December 23, 1991, pursuant to 28 U.S.C. § 2254, in case number 91–936–CW–ORL–18. The Court entered an Order on

February 12, 1993, 1993 WL 841565, denying the petition. Petitioner filed a direct appeal with the Eleventh Circuit Court of Appeals, which entered a written opinion affirming the denial. *See Medina v. Singletary,* 59 F.3d 1095 (11th Cir.1995). The appellate court later denied Petitioner's petition for rehearing and suggestion of rehearing *en banc. See Medina v. Singletary,* 70 F.3d 1287 (11th Cir.1995). Petitioner subsequently filed a petition for writ of certiorari with the Supreme Court, which was denied. *See Medina v. Singletary,* —— U.S. ——, 116 S.Ct. 2505, 135 L.Ed.2d 195 (1996).

The Governor of Florida signed a death warrant on October 30, 1996, scheduling Petitioner's execution for December 5, 1996. On December 2, 1996, pursuant to section 922.07, Florida Statutes (1995), Petitioner wrote a letter to the Governor asking for a stay of execution on the basis of a mental health expert's assessment that Petitioner was not competent to be executed.[1] The Governor stayed the execution and appointed a commission of three psychiatrists to determine whether Petitioner understood the nature and effect of the death penalty and why it was being imposed on him. The psychiatric commission examined Petitioner, and the members unanimously found that he understood the nature and effect of the death penalty and why it was being imposed on him. Thus, on January 6,1997, the Governor lifted the stay of execution and rescheduled the execution for the week beginning January 27,1997, and ending February 3, 1997.

Subsequently, Petitioner filed with the state trial court 1) a motion to determine his competence to proceed in a Rule 3.850 proceeding and 2) pursuant to Rule 3.811, a combined emergency motion for a stay of execution pending judicial determination of competency. The state trial court heard extensive argument on the first motion and found that Petitioner was competent to proceed in postconviction proceedings. The state trial court, without conducting an evidentiary hearing, denied the combined emergency motion (pursuant to Rule 3.811) for a stay of execution judicial determination of competency. The state trial court then held

---

1. Petitioner filed with the state trial court on

December 6, 1996, a Rule 3.850 motion.

a hearing on Petitioner's December 6, 1996, Rule 3.850 motion and denied the motion. The Supreme Court of Florida stayed the execution on January 27, 1997, and on February 10, 1997, reversed the state trial court's denial of Petitioner's Rule 3.811 motion and remanded for an evidentiary hearing pursuant to Rule 3.812.[2]

The state trial court appointed two mental health experts to examine Petitioner, who concluded that Petitioner had the mental capacity to understand the fact of the pending execution and the mason for it. The state trial court also held an evidentiary hearing and heard testimony from several witnesses on behalf of Petitioner. On March 3, 1997, the state trial court denied the motion and specifically found that Petitioner did not meet the criteria for insanity at the time of execution; that Petitioner did not lack the mental capacity to understand the reason for the pending execution; that Petitioner did not lack the mental capacity to understand the fact of the pending execution; and that Petitioner understood that his execution was imminent and why he was to be executed. The Supreme Court of Florida affirmed the denial by order dated March 19, 1997.

Petitioner filed another motion for post-conviction relief with the state trial court on March 17, 1997, and the state trial court held oral argument on the motion on March 20, 1997. The state trial court denied the motion, and the denial was affirmed by the Supreme Court of Florida on March 21, 1997.

### The Antiterrorism and Effective Death Penalty Act ("AEDPA")

On April 24, 1996, the President signed into law amendments to 28 U.S.C. §§ 2244, 2253, 2254, 2255, Appellate Rule 22, and 21 U.S.C. § 848(q). As a result, the law now requires a petitioner to obtain authorization from the appellate court before filing a second or successive § 2254 application in the district court:

(3)(A) Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an

order authorizing the district court to consider the application.

28 U.S.C. § 2244(b)(3)(A).

Although Petitioner admits that the newly amended statute is "implicated," he contends that the provisions would deny him the opportunity to present claims that he would be entitled to pursue under the old law. Thus, he argues that applying the new provisions would "impair the rights he had to bring a second habeas petition as those rights existed in 1991 [when the first petition was filed]."

The United States Supreme Court has applied the successive petition restrictions of 28 U.S.C. § 2244 to an attempt to file a second habeas proceeding after the effective date of the AEDPA, even though the first habeas petition was filed and decided before enactment of the amendments. *Felker v. Turpin,* —— U.S. ——, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996). Similarly, the Eleventh Circuit Court of Appeals has addressed the applicability of the amended statute in death penalty cases. In fact, the Eleventh Circuit has applied the "gate-keeping" mechanism of § 2244(b)(3), in cases in which the first federal habeas corpus proceedings were resolved prior to enactment of the AEDPA. *See In re Waldrop,* 105 F.3d 1337,1337–38 (11th Cir.1997); *In re Mills,* 101 F.3d 1369, 1370–71 (11th Cir.1996); *In re Blackshire,* 98 F.3d 1293, 1293 (11th Cir.1996).

Also telling for the instant case, the Eleventh Circuit has addressed the applicability of the AEDPA's successive petition provisions to Rule 60 motions. *Felker v. Turpin,* 101 F.3d 657, 660–61 (11th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 451, 136 L.Ed.2d 346 (1996). Nearly three years after denial of his first federal habeas petition, Felker filed a Rule 60 motion for relief from the judgment. The appellate court found that the district court's denial of the motion was proper, "because it was due to be treated as a second or successive habeas corpus application." *Id.* at 660. Consequently, the Court concluded Felker was required, under 28 U.S.C. § 2244(b)(3), to seek authorization from the court of appeals prior to initiating the action in the district court.

---

2. All other orders of the state trial court were affirmed.

Petitioner's reliance on *Burris v. Parke,* 95 F.3d 465 (7th Cir.1996) is misplaced. In *Burris,* the Seventh Circuit held that the AEDPA did not apply when a habeas corpus petitioner filed a second petition *before* the effective date of the act. The appellate court specifically discussed *Felker v. Turpin,* —— U.S. ——, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996):

> The case is unlike *Felker v. Turpin,* —— U.S. ——, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996), where the first petition was filed before the new law but the new law was applied to the second petition. There was no "mousetrapping" there. That, rather than the fact that Felker, unlike Burris, filed his second petition after the law was passed, is why it was proper to apply the new law to Felker's second petition.

The Seventh Circuit further clarified this matter in *Nuñez v. U.S.,* 96 F.3d 990 (7th Cir.1996). In *Nuñez,* the first section 2255 motion was filed in 1993, and the second motion was filed on June 27, 1996 (after the enactment of the AEDPA). According to the appellate court,

> No matter how powerful a petitioner's showing, only this court may authorize the commencement of a second or successive petition. Unlike the former standard, under which a second petition could be pursued unless the government established that is was an abuse of the writ, the new prior-approval device is self-executing. *From the district court's perspective, it is an allocation of subject-matter jurisdiction to the court of appeals. A district court must dismiss a second or successive petition, without awaiting any response from the government, unless the court of*

appeals *has given approval for its filing. . . . A second or successive collateral attack may no more begin in the district court than a criminal prosecution may commence in the court of appeals.*

> ... [A] prisoner who wants to commence a second or successive petition after April 23, 1996, still must obtain this court's [Seventh Circuit's] permission.

*Id.* at 991 (citation omitted) (emphasis added).[3] In the present case, the second habeas petition was commenced *after* the effective date of the act, and, in any event, Petitioner has not shown that he was "mousetrapped" by the change of the law.

■ Hence, before Petitioner will be permitted to file a second or successive habeas corpus application in this Court, Petitioner must move in the Eleventh Circuit Court of Appeals for an order authorizing the district court to consider the application. *See* 28 U.S.C. § 2244(b)(3). For this reason, this case will be dismissed to allow Petitioner the opportunity to seek authorization from the Eleventh Circuit Court of Appeals.[4]

### Abuse of the Writ

In the event that the AEDPA is inapplicable to this case, it must still be dismissed as an abuse of the writ. Rule 9(b) of the Rules Governing Section 2254 Cases provides as follows:

> A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in

---

**3.** Curiously, although Petitioner discussed cases from the Seventh Circuit with regard to this matter, Petitioner failed to discuss the *Nuñez* decision.

**4.** In addition, the Court has reviewed the merits of the petition and concludes that the claims are without merit. Petitioner contends that his Fifth, Eighth, and Fourteenth Amendment rights, as well as the *ex post facto* clause prohibitions, were violated when he was required to prove his incompetency to be executed by clear and convincing evidence. The Florida Supreme Court reviewed the trial court's decision and found that the lower court "properly considered all the evi-

dence and made a determination ... as we directed." This Court concludes that the state trial court process utilized to determine Petitioner's competency was not constitutionally infirm. Petitioner was afforded the requisite protections required to protect his due process rights and no *ex post facto* clause violation has been demonstrated. Petitioner also asserts a *Brady* claim and an actually innocent claim. As to all of Petitioner's claims, the state trial judge properly considered and analyzed the claims, and the Florida Supreme Court affirmed his decisions. This Court sees no constitutional flaw in the determinations of the state courts.

prior petition constituted an abuse of the writ.

"A successive petition raises grounds identical to those raised and rejected on the merits on a prior petition. An abusive petition occurs where a prisoner files a petition raising grounds that were available but not relied upon in a prior petition, or engages in other conduct that disentitles him to the relief he seeks." *Schlup v. Delo,* 513 U.S. 298, 318–19 n. 34, 115 S.Ct. 851, 863 n. 34, 130 L.Ed.2d 808 (1995) (citations omitted) (quotations omitted); *see also Gunn v. Newsome,* 881 F.2d 949, 955 n. 6 (11th Cir.), *cert. denied,* 493 U.S. 993, 110 S.Ct. 542, 107 L.Ed.2d 540 (1989) (a successive petition raises claims that are identical to claims previously raised and rejected on the merits in a prior federal habeas corpus petition, whereas "a petition that raises a ground for relief not raised in the prior petition is analyzed as an 'abuse of the writ.' ").

■ "Unless a habeas petitioner shows cause and prejudice, a court may not reach the merits of ... *successive claims* which raise grounds identical to grounds heard and decided on the merits in a previous petition [or] ... new claims, not previously raised which constitute an *abuse of the writ....*" *Sawyer v. Whitley,* 505 U.S. 333, 338, 112 S.Ct. 2514, 2518, 120 L.Ed.2d 269(1992) (citations omitted); *Schlup,* 513 U.S. at 316–18, 115 S.Ct. at 862–63 (a habeas court may not ordinarily reach the merits of successive claims absent a showing of cause and prejudice). Even if the petitioner cannot meet the cause and prejudice standard, a federal court may reach the merits of an abusive or successive petition if the failure to entertain the claims would constitute a "fundamental miscarriage of justice." *See Schlup,* 513 U.S. at 320, 115 S.Ct. at 864; *Sawyer,* 505 U.S. at 340, 112 S.Ct. at 2519; *Macklin v. Singletary,* 24 F.3d 1307, 1313 (11th Cir.1994), *cert denied,*—— U.S. ——, 115 S.Ct. 1122, 130 L.Ed.2d 1085 (1995) ("[a] habeas court may reach the merits of a claim not raised in a previous petition only if the petitioner establishes both cause and prejudice, or shows that the fundamental miscarriage of justice, or actual innocence, exception applies.").

■ When the claimed injustice is that constitutional error has resulted in the conviction of one who is actually innocent of the crime, "the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup,* 513 U.S. at 327, 115 S.Ct. at 867. Hence, "a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 329, 115 S.Ct. at 868.

■ Petitioner's claims are subject to dismissal under Rule 9(b) because none of Petitioner's claims were raised previously. A petition may be dismissed when new or different grounds are raised if it is found that the failure of Petitioner to raise those grounds in a prior petition constituted an abuse of the writ. The Court determines that Petitioner has failed to demonstrate cause for failing to raise these claims previously and that Petitioner has not shown prejudice. Even if Petitioner did not actually know of the facts or legal grounds to support the new claims, a district court still may find no excuse when the petitioner *"reasonably should have known of certain facts, or that certain facts constitute legal grounds for federal habeas relief...."* *Gunn v. Newsome,* 881 F.2d 949, 959 (11th Cir.), *cert. denied,* 493 U.S. 993, 110 S.Ct. 542, 107 L.Ed.2d 540 (1989) (emphasis added). Whereas the inquiry into a petitioner's actual knowledge is governed by a subjective standard, the inquiry into a petitioner's reasonableness is judged by an objective standard. *Id.* at 960.

■ Further, Petitioner has not demonstrated that the failure to address these claims would result in a fundamental miscarriage of justice. Petitioner fails to make even a colorable showing that would satisfy the fundamental miscarriage of justice test. Petitioner has failed to establish cause and has failed to demonstrate a miscarriage of justice; therefore, his abuse of the writ is

inexcusable, and the relief requested in these claims must be denied.[5]

Accordingly, it is now **ORDERED AND ADJUDGED:**

1. Petitioner's Motion to Stay Execution (Doc. No. 2, filed March 21, 1997) is **DENIED.**

2. Petitioner's Motion for Nunc Pro Tunc Appointment of Counsel Pursuant to the Criminal Justice Act (Doc. No. 3, filed March 21, 1997) is **GRANTED** *nunc pro tunc* to March 19, 1997, the date the Florida Supreme Court denied the postconviction relief addressed in this petition.

3. Petitioner's Motion for Leave to Proceed in Forma Pauperis (Doc. No. 4, filed March 21, 1997) is **GRANTED.**

4. This case is hereby **DISMISSED** without prejudice to allow Petitioner the opportunity to seek authorization from the Eleventh Circuit Court of Appeals under the AEDPA.

5. Respondents' Motion to Transfer to Proper Forum (Doc. No. 6, filed March 24, 1997) is **DENIED** as moot.

6. The Clerk of the Court is directed to close this case.

5. In the event that any portion of Petitioner's claims were previously raised, Petitioner's reassertion in the instant petition of matters which were previously raised and rejected by the Court, clearly constitutes a successive petition. Petitioner has not shown cause for raising these matters again and has not shown prejudice. Petitioner fails to make even a colorable showing that would satisfy the fundamental miscarriage of justice standard. The operative facts underlying Petitioner's successive claims have remained essentially the same and are not due a new examination now. *See Mitchell v. Kemp,* 827 F.2d 1433, 1435–36 (11th Cir.), *cert. denied,* 483 U.S. 1050, 108 S.Ct. 14, 97 L.Ed.2d 812 (1987). Petitioner has failed to establish cause and prejudice and has failed to demonstrate a miscarriage of justice; therefore, Petitioner's successive claims must be denied.