Ralph RICHARDSON, Petitioner,

v.

Janet RENO, et. al., Respondents.

No. 97–3799–CIV.

United States District Court,
S.D. Florida,
Miami Division.

Feb. 13, 1998.

Ira Kurzban, Helena Tetzeli, Kurzban, Kurzban, Weinger & Tetzeli, P.A., Miami, FL, for Petitioner.

Dexter Lee, Asst. U.S. Atty., Miami, FL, for Respondent.

## ORDER

EDWARD B. DAVIS, Chief Judge.

BEFORE THE COURT IS Petitioner's Amended Application for Writ of Habeas Corpus (filed December 10, 1997), and Respondents' Motion to Dismiss Petition for Writ of Habeas Corpus and Complaint for Declaratory, Injunctive and Mandamus Relief for Lack of Subject Matter Jurisdiction (filed December 5, 1997). On December 30, 1997, the Magistrate Judge issued a Report recommending that the Court grant Petitioner's application. Respondents objected.

Having independently reviewed the petition, the objections, and the record, the Court will adopt the recommendation of Magistrate Judge Bandstra; however, the Court finds that additional discussion of the case is warranted.

## FACTUAL BACKGROUND

Petitioner Ralph Richardson, a lawful permanent resident of the United States, seeks an order compelling the U.S. Immigration and Naturalization Service ("INS") to provide him with a bond hearing before an Immigration Judge while the INS determines whether he is removable from the United States.

Richardson is a native and citizen of Haiti. After turning two years old in 1968, he became a lawful permanent resident of the United States. Richardson has resided continuously in this country with his wife and three children—all of whom are U.S. citizens. He and his family live in Georgia, where he owns and operates a successful cleaning service.

On October 26, 1997, Richardson and his family returned from a two-day trip to Haiti. This had been his first trip outside the country since he legally immigrated here at the age of two. The INS detained Richardson at the Miami International Airport. Upon questioning, he admitted that he had two prior convictions. This admission resulted in the INS detaining Richardson at Krome Detention Center without opportunity for release on bond while it instituted removal proceedings. The INS asserts that Richardson was detained because he was not "clearly and beyond a doubt" entitled to be admitted to the United States under Section 235(b)(2)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1225(b)(2)(A). He was charged with being inadmissable under Section 212(a)(2) of the INA, 8 U.S.C. § 1182(a)(2), due to his prior conviction. He remains in Krome today.

On November 13, 1997, Richardson requested the INS to release him on bond pending removal proceedings under Section 303(b)(3) of the Transition Period Custody Rules of the Illegal Immigration Reform and Immigration Responsibility Act of 1996 ("IIRIRA"). On December 4, 1997, the INS denied Richardson's request for bond, which it had interpreted as a request for parole.

While waiting for the INS bond decision, Richardson filed a Motion for Bond Pending Deportation Proceedings with the Office of the Immigration Judge at the Krome Detention Center on November 18, 1997. Six days later, the Immigration Judge denied Richardson's request for bond without conducting a hearing. In a form order, the Immigration Judge noted, without further explanation, that Richardson was an "arriving alien" pursuant to INA § 101(a)(13)(C)(v).[1]

Following that decision, Richardson filed this habeas corpus petition challenging the Immigration Judge's denial of his request for a bond hearing. Richardson argues that the Immigration Judge's decision violated his statutory and constitutional rights because of the unsupported conclusion that he was an "arriving alien" despite his lawful permanent resident status and the brevity of his travel to Haiti.

Respondents answer that the Court has no jurisdiction to review the Immigration Judge's decision, and also maintain that on the merits, Richardson has no statutory or constitutional right to a bond hearing.

Magistrate Judge Bandstra, in his Report and Recommendation, found that this Court has jurisdiction and that Richardson was entitled to a bond hearing. Respondents moved for reconsideration of the report and recommendation based on *In Re Collado,* Int. Dec. 3333 (BIA December 18, 1997), 1997 WL 805604. Magistrate Judge Bandstra denied this motion. Respondents also objected to the Magistrate Judge's report and recommendation.

## DISCUSSION

### a. Subject Matter Jurisdiction

Respondents argue that this Court does not have jurisdiction pursuant to INA § 236(e) and 242(g), and also because Petitioner has not exhausted his administrative remedies by appealing the Immigration Judge's decision to the Board of Immigration Appeals ("BIA"). The Court disagrees and finds that it has jurisdiction to hear Petitioner's Application for Writ of Habeas Corpus.

It is well established that Respondents have the burden of demonstrating that the Court lacks subject matter jurisdiction, as there is a strong presumption in favor of judicial review of administrative action. *See, e.g., McNary v. Haitian Refugee Ctr., Inc.,* 498 U.S. 479, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991). Respondents must demonstrate, therefore, "by clear and convincing evidence" that the recently enacted immigration legislation strips this Court of jurisdiction. *See Abbott Labs. v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). Respondents have not done so.

---

1. INA § 101(a)(13)(C)(v), 8 USC § 1101(a)(13)(C)(v) states that:
[a]n alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking admission into the United States for purposes of the immigration laws unless the alien ... (v) has committed an offense identified in section 1182(a)(2) of this title, unless for such offense the alien has been granted relief under section 1182(h) or 1229b(a) of this title; ...

Respondents rely on INA § 236(e) and INA § 242(g). Section 236(e) states that

[t]he Attorney General's discretionary judgment required in the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

Section 242(9) provides that

[e]xcept as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Chapter.

■ The Supreme Court recently held that "the congressional intent to repeal habeas jurisdiction must be express," and that "[r]epeals by implication are not favored." *Felker v. Turpin,* 518 U.S. 651, 116 S.Ct. 2333, 2338, 135 L.Ed.2d 827 (1996) (citations omitted). Therefore, pursuant to this "clear statement" rule, Congress cannot repeal habeas corpus jurisdiction by implication. *Id.* As the *Felker* Court acknowledged, Congress knows how to repeal habeas jurisdiction. Where it intends to do so, it states that intention expressly. *Id.* "This—as Congress is doubtless aware—is the purpose of the clear statement rule: courts do not have to resort to divining phantom or unarticulated congressional intentions to repeal habeas jurisdiction where there is statutory silence." *Mojica v. Reno,* 970 F.Supp. 130, 160 (E.D.N.Y.1997).

■ Neither Section 236(e) nor 242(g) expressly repeals habeas jurisdiction. The statute does not even mention habeas corpus review. Whether Congress meant to imply that courts cannot review habeas petitions is not for this Court to decide. The only question is whether Section 236(e) or 242(g) expressly repeals jurisdiction over habeas corpus petitions. Review of these sections demonstrates that the answer is no.[2]

■ The Court also rejects Respondents' claim that it lacks jurisdiction because Petitioner failed to exhaust his administrative remedies. The exhaustion requirement is not a jurisdictional prerequisite, but rather a matter committed to the "sound discretion of the court." *See Haitian Refugee Center v. Smith,* 676 F.2d 1023, 1032 (5th Cir.1982). There are also many exceptions to the exhaustion requirement that apply here. For example, exhaustion is not required where the agency's interpretation of a statute is clearly at odds with its plain meaning. *See McClendon v. Jackson Television, Inc.,* 603 F.2d 1174, 1177 (5th Cir.1979). Exhaustion is also not required where there would be irreparable harm. *See Kelly v. U.S. Postal Serv.,* 492 F.Supp. 121, 127 (S.D.Ohio 1980). Finally, exhaustion is not required if it would be futile. *See American–Arab Anti–Discrimination Comm. v. Reno,* 70 F.3d 1045, 1058 (9th Cir.1995). Because the BIA has already spoken on this issue, the result would be the same if Petitioner were to present his challenge to the BIA. While he did so, months could be lost while he sat in Krome. Therefore, the Court finds that it would be futile to require Petitioner to exhaust his administrative remedies and that he would suffer irreparable harm. Accordingly, the Court will retain jurisdiction without an administrative appeal.

*b. The Merits*

Respondents allege that because Petitioner is an "arriving alien," the Immigration Judge lacks jurisdiction to hear the motion for release on bond pursuant to 8 C.F.R. §§ 236.1(c)(5), (d), and 1.1(q). 8 C.F.R. § 236.1(c)(5) states that, "[a]n immigration judge may not exercise authority provided in this section and the review process described in paragraph (d) of this section shall not apply with respect to: (i) Arriving aliens, as described in section 1.1(q) ..." 8 C.F.R.

---

**2.** Other District Courts have disagreed on this issue. *Compare Mayers v. Reno,* 977 F.Supp. 1457 (S.D.Fla.1997) (Moreno, J.) (holding that Congress clearly intended to divest the courts of habeas review); *Safarian v. Reno,* 968 F.Supp. 1101 (E.D.La.1997) (same) *with Tefel v. Reno,* 972 F.Supp. 608 (S.D.Fla.1997) (King, J.) (no divestment of jurisdiction); *Mojica,* 970 F.Supp. at 130 (same).

§ 1.1(q) provides, "The term 'arriving alien' means an alien who seeks admission to ... the United States." While the term "arriving alien" is not defined more specifically in the statute, a different section of the INA provides that

> [a]n alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking admission into the United States for purposes of the immigration laws unless the alien ... (v) has committed an offense identified in section 1182(a)(2) of this title, unless for such offense the alien has been granted relief under section 1182(h) or 1229b(a) of this title; ...

INA § 101(a)(13)(C)(v), 8 U.S.C. § 1101(a)(13)(C)(v).

Petitioner contends that INA § 101(a)(13)(C) merely codifies the doctrine enunciated by the Supreme Court over thirty years ago in *Rosenberg v. Fleuti,* 374 U.S. 449, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963). In *Fleuti,* the Supreme Court found that a lawful permanent resident alien who leaves the United States for a "brief, casual and innocent departure" is not considered upon his return to be making an "entry" into the United States for immigration purposes. Therefore, the alien is not subject to exclusion on grounds that existed prior to his departure from this country. *Id.* At no point in these proceedings has INS established or even attempted to establish that Petitioner's departure abroad was anything other than brief, casual or innocent.

Respondents, however, rely on a recent BIA decision finding that a returning lawful permanent resident who committed an offense described in INA § 212(a)(2), is to be considered an alien seeking admission, *without regard* to the nature and circumstances of the alien's departure. *In Re Collado,* Int. Dec. 3333 (BIA Dec. 18, 1997), 1997 WL 805604. The BIA determined that

101(a)(13)(C) compelled a finding that a lawful permanent resident who fell within one of the six categories enumerated in Section 101(a)(13)(C)(i)–(vi) [3] should be regarded as seeking an admission into the United States, despite his lawful permanent resident status. *Id.* Accordingly, the BIA held that *Fleuti* does not survive the IIRIRA, and that the Immigration Judge is not to consider whether the departure from the United States was "brief, casual, and innocent" under the *Fleuti* doctrine.

The Court must determine what weight to give to the BIA decision. The deference due to an administrative interpretation of the laws involves a dual inquiry. *See Chevron v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

> First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the Court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction of the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Id.* 467 U.S. at 842–43. The *Chevron* Court recognized that "[t]he judiciary is the final authority on issues of statutory construction...." *Id.* at 843 n. 9.

The BIA interpretation of INA § 101(a)(13)(C) does violence to the plain

---

**3.** These six categories include aliens that: (i) ha[ve] abandoned or relinquished [permanent resident] status, (ii) ha[ve] been absent from the United States for a continuous period in excess of 180 days, (iii) ha[ve] engage in illegal activity after having departed the United States, (iv) ha[ve] departed from the United States while under legal process seeking removal of the alien from the United States, including removal proceedings under this Act and extradition proceedings, (v) ha[ve] committed an offense identified in section 212(a)(2), unless since such offense the alien has been granted relief under section 212(h) or 240(a), or (vi) is attempting to enter at a time or place other than as designated by immigration officers or has not been admitted to the United States after inspection and authorization by an immigration officer. INA Section 101(a)(13)(C)(i)–(vi).

meaning of that section. Section 101(a)(13)(C) simply specifies which returning lawful permanent residents *may not* be regarded as "seeking admission." It does not provide a statutory bright line for determining which returning lawful permanent residents *shall* be considered to be "seeking admission." If Congress had intended that a returning lawful permanent resident *shall* be regarded as "seeking admission" when one of the six categories applied, it certainly would have said so.[4] Instead, Congress stated six exceptions to the bright line rule that an alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking admission. If one of the exceptions applies, the Immigration Judge should do as she always did: determine if the alien's stay was brief, casual, and innocent.

It is also clear that Congress in enacting INA § 101(a)(13)(C) did not intent to overturn the *Fleuti* doctrine. Congress must be presumed to be aware of existing law when it amends or enacts a statute. *See McNary v. Haitian Refugee Center, Inc.,* 498 U.S. 479, 481, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991). Thus, when Congress enacted INA § 101(a)(13)(C), it was presumably aware of the *Fleuti* doctrine, and yet it did not expressly reverse or repeal that doctrine. Section 101(a)(13)(C) simply provides that a lawful permanent resident of the United States shall not be regarded as seeking admission when none of the six conditions apply. If one or more of the conditions do apply, then the statute authorizes but does not require a finding that the alien is seeking admission. Application of those conditions is up to the Immigration Judge in removal proceedings at which time the alien and the INS can argue factors relevant under *Fleuti.*

Any other interpretation would lead to absurd and harsh results. *See Fleuti,* 374 U.S. at 449. In *Fleuti,* the Court cited numerous examples demonstrating that Congress could not have intended to exclude permanent residents merely because they step across the international border and return to the United States in a few hours. *Id.* at 461. For example, the Court cited an opinion by Judge

Learned Hand where an alien took an overnight sleeper from Buffalo to Detroit on a route through Canada. *Id.* at 454 (citing *Di Pasquale v. Karnuth,* 158 F.2d 878 (2d Cir. 1947)). Judge Hand held that it would be too harsh a result to find that the alien was re-entering the country. "Were it otherwise, the alien would be subjected without means of protecting himself to the forfeiture of privileges which may be, and often are, of the most grave importance to him." *Fleuti,* 374 U.S. at 454 (citing *Karnuth,* 158 F.2d at 879). The Court warned that the statute should not be "woodenly construed" because so much was at stake for the permanent resident. *See Fleuti,* 374 U.S. at 460. "Certainly when an alien ... who has entered the country lawfully and has acquired a residence here steps across a border and, in effect, steps right back, subjecting him to exclusion ... seems to be placing him at the mercy of the 'sport of chance' and the 'meaningless and irrational hazards' to which Judge Hand alluded." *Fleuti,* 374 U.S. at 460 (citing *Karnuth,* 158 F.2d at 879).

The fact that the *Fleuti* doctrine originated in the course of interpreting a statute in which the terminology was "seeking to enter," or "making an entry," rather than "seeking to be admitted," is of no consequence. The same principles of statutory construction apply, and the spirit of the *Fleuti* doctrine still applies.

Legislative history also demonstrates that Congress did not intend to overturn *Fleuti.* The BIA concluded that *Fleuti* did not survive INA § 101(a)(13)(C) in part because "Congress has now amended the law to expressly preserve some, but not all, of the *Fleuti* doctrine, as that doctrine developed following the Supreme Court's 1963 decision." *See In Re Collado* at *4 (citing H.R. 2202 No. 104–469, Pt. 1, at 225–26 (1996)). Congress, however, only intended to overturn "*certain interpretations* of *Fleuti* by stating that a returning lawful permanent resident alien is seeking admission if the alien is attempting to enter or has entered the United States without inspection and au-

---

4. For example, Congress could have easily stated that an alien lawfully admitted for permanent resident status in the United States shall not be regarded as seeking admission into the United

States for purposes of the immigration laws; but if the alien has committed an offense in section 212(a) such alien *shall* be regarded as seeking admission.

thorization by an immigration officer."[5] *See* H.R.2202 No. 104–469, Pt. 1, at 226 (emphasis added). Here, Congress was concerned about aliens entering surreptitiously—without inspection by an INS officer. Therefore, INA § 101(a)(13) expressly provides that an individual who enters at a location other than one designated by INS is to be treated as an alien "seeking admission." No where does Congress indicate that it intended to overrule the central holding of *Fleuti* which is at issue here.

It is evident from the plain meaning of the statute, the legislative history, and the important policy concerns that animated the Court in 1963 that *Fleuti* is still good law.[6] Accordingly, it is

ORDERED AND ADJUDGED that the petition for writ of habeas corpus is GRANTED and that Respondent's Motion to Dismiss is DENIED. This case is REMANDED TO THE INS for proceedings consistent with the above Order. Specifically, the Court finds that Petitioner is entitled to an individualized hearing within eleven (11) days from the date stamped on this Order, at which time the Immigration Judge should determine whether Petitioner is an arriving alien, and if not, whether and under what conditions Petitioner may be released from custody pending the completion of deportation proceedings.

This case is CLOSED. All pending motions not otherwise ruled upon are DENIED AS MOOT. This Court retains jurisdiction over attorneys' fees and costs.

---

**5.** The ultimately enacted definition in section 101(a)(13)(C) of the present law has its origins in earlier House bills. *See* H.R. 2202, 104th Cong. § 301 (1996). The ultimate language enacted by the IIRIRA is largely identical to the language in section 301(A) of H.R.2202.

**6.** As in *Fleuti*, this Court's decision is based on principles of statutory construction; therefore, the Court did not reach the constitutional issues raised by Petitioner. *See Fleuti*, 374 U.S. at 457.