**Daniel D. TAVARES, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**Civil Action No. 95–11886–WGY.**

United States District Court,
D. Massachusetts.

Feb. 14, 1996.

Daniel D. Tavares, Plymouth, MA, pro se.

### *MEMORANDUM AND ORDER*

YOUNG, District Judge.

This motion under 28 U.S.C. § 2255 to vacate, set aside, or correct Mr. Tavares' federal sentence must be, and hereby is, dismissed as premature pursuant to Rule 5 of the Rules Governing Section 2255 Proceedings in the United States District Courts since "absent extraordinary circumstances a district court should not entertain a § 2255 petition while (as is the case here) a direct appeal from the same conviction is pending." *United States v. Luciano–Mosquera,* 63 F.3d 1142, 1158 n. 9 (1st Cir.1995); *United States v. Gordon,* 634 F.2d 638 (1st Cir.1980).

To aid in the resolution of the direct appeal, however, it will be helpful briefly to discuss one of Mr. Tavares' ("Tavares") habeas corpus claims, inasmuch as it grows out of a practice in this session that varies markedly from the familiar.

In Claim One, Tavares complains of the manner in which the Court dealt with a jury question during jury deliberations.

After deliberations had commenced, the jury asked to review the transcript of the testimony of certain witnesses. This request is common in this session,[1] and the Court handled it in keeping with its usual procedure.

In most sessions, in the absence of a completed daily transcript, the court has no transcript to give the jury and thus gracefully declines. *See e.g., United States v. Akitoye,* 923 F.2d 221, 225 (1st Cir.1991) (noting the

---

1. *See e.g., United States v. Cunan,* 93–CR–10047–  WGY, trial transcript of jury request to review

trial court's inability to accede to the jury's request for a transcript). In this session, however, Court Reporter Donald Womack has personally invested in the computer hardware and software necessary to create a Computer–Integrated Courtroom, see California Judicial Council Task Force on Court Technology, Computer–Integrated Courts: A Planning and Evaluation Guide 4 (July 1994) (describing the Computer–Integrated Courtroom), replete with real time court reporting, see Administrative Office of the United States Courts, Court Administration Bulletin, Court Reporting Issues in the Federal Courts 1 (March 1995) (describing real time court reporting). Computers owned by the court reporter are located on the bench, on each counsel table, and at the court reporter's station. The use of the real time computer-displayed transcript by counsel in examining witnesses and by the Court in making evidentiary rulings is obvious to a jury. This, coupled with the Court's practice of causing the written transcript of the jury charge to be delivered to the jury promptly upon its conclusion, apparently leads juries to conclude that the complete transcript is readily available.

Frequently juries in this session ask for a full trial transcript. This presents a dilemma because the raw computer input, while largely accurate given the expertise of the court reporter, has neither been reviewed nor certified. This is a crucial distinction wherever context, numbers, or proper names may be significant, *i.e.*, the raw computer input is *never* a sufficient record of the court proceedings. Moreover, the transcript sets out the bench conferences as they occur, and these the jury is not entitled to see. Thus,

before a jury could see a transcript of witness' testimony, it must be reviewed or "scoped," the bench conferences taken out, and the transcript certified. This takes time, no matter how fast the court reporter can work with his computer input.[2] This burden is especially intense in this session where it is the practice of the Court, just as soon as one case is committed to a jury, to commence the next trial—necessarily requiring the presence of the court reporter in the courtroom.

Still, given the constant advances in technology and the superb professionalism of the court reporter, we try to accommodate the jury's request. The Court follows this procedure:

—A jury request for a complete trial transcript is denied.

—The jury is told that, should they wish to review the testimony of a particular witness or witnesses, they should request such testimony by naming the witnesses; that the court reporter will do his best but that, because the transcript preparation will take some time in view of the Court's other duties, deliberations ought continue. Furthermore, the Court instructs the jury that no special emphasis ought be placed on the furnished transcript, but rather the jury ought recollect the entire trial testimony. *See United States v. Akitoye*, 923 F.2d 221 (1st Cir.1991) (noting with approval the trial court's handling of the jury's request for trial transcripts and observing that such decisions are properly left to the trial judge's sound discretion).

—As soon as possible, given his responsibilities in the courtroom, the court reporter reviews the transcript of the testimony of each witness requested. Working witness by witness, he scopes the testimony, removes

witness testimony (D.Mass. Oct. 17, 1995); *Cardoso v. Children's Hospital Corp.*, 95–CV–10234–WGY, trial transcript of jury request to review witness testimony (D.Mass. Nov. 9, 1995); *Furst v. Starr*, 94–CV–11871–WGY, trial transcript of jury request to review witness testimony (D.Mass. Nov. 17, 1995); *United States v. Cardoza*, 95–CR–10260–WGY, trial transcript of jury request to review witness testimony (D.Mass. Dec. 7, 1995); *United States v. DeBartolomeo*, 95–CR–10239–WGY, trial transcript of jury request to review witness testimony (D.Mass. Jan. 22, 1996).

2. Against this background, the current proposals to authorize "real time" court reporters to pro-

vide "unscoped" transcripts for a fee seem odd indeed. They wholly misconceive real time court reporting as some sort of "product," rather than the vital, justice-enhancing "service" it is in fact. More importantly, unscoped transcripts can in no sense be said to be accurate "records" of the judicial proceedings. There is only one such record—the record certified by the court's official reporter. *See e.g., United States v. Abrams*, 95–10272–WGY (transcript) (D.Mass. Feb. 2, 1996) (recognizing that the only "record" of grand jury testimony is the court reporter's certified transcript, not her tape recording of the proceeding).

the bench conferences, prints out the testimony, and certifies it.

—Just as soon as the testimony of any requested witness is certified, counsel are afforded an opportunity to review it, and the courtroom deputy clerk delivers it in its entirety (*i.e.*, direct, cross, and re-direct and re-cross, if any, of the particular witness) to the jury.

—The same procedure is followed, in no particular order save expedition, as to each witness whose testimony the jury has requested.

This procedure was followed in Tavares' case without any objection by his trial counsel. Now, however, Tavares criticizes the procedure on two grounds. Though the failure by Tavares' counsel timely to object would allow these claims to be resolved on procedural grounds, *see Akitoye*, 923 F.2d at 226 (citing *Reilly v. United States*, 863 F.2d 149, 160 [1st Cir.1988] ), considering them on their merits may be instructive.

First, he says that the Court misunderstood the jury's question and sent in the wrong transcripts. This is not a frivolous claim, though nothing would appear to turn on it.

This is Tavares' second trial. *See United States v. Tavares*, 802 F.Supp. 559 (D.Mass. 1992), *rev'd* 21 F.3d 1 (1st Cir.1994). During this second trial reference was made, when examining witnesses, to their testimony in the "prior proceeding." It is at least possible, therefore, that, as Tavares contends, the jury question was directed to the transcripts of the witnesses' testimony during the first trial. While this seems an unlikely interpretation (since the jury first asked for the full transcript of this second trial), even if the particularized request referred to testimony from the first trial, there would seem to be no prejudice. Such testimony was not received in evidence in its entirety in the second trial and is, in any event, inadmissible hearsay as the witnesses were available, and testified, in the second trial. *See* Fed. R.Evid. 804(a) and (b)(1). There would likewise seem to be no prejudice in allowing a properly instructed jury to read the second trial transcript.

In this case, the jury followed the Court's instructions and continued to deliberate while testimony was being delivered to them, witness by requested witness. The jury returned its guilty verdict before receiving the requested transcript of the testimony of the witness Sheldon Blake.

Tavares objects, arguing that if the jury **were** to receive transcripts in the jury room, they ought necessarily have reviewed Sheldon Blake's testimony before returning their verdict. This argument would appear to misconceive the jury's role. Jurors are judges—judges of the facts. Once they are properly charged and retire for their deliberations, they are, functionally, in charge of the pace and manner of future proceedings. When the jurors have requested that a portion of the trial transcript be provided to them, nothing prevents them on further consideration from agreeing upon and returning a verdict before receiving it.

In any event, because the present habeas corpus petition is premature, this Court is required to dismiss it on that ground.