Jeffrey L. **LIBBY**, Petitioner, Appellant,

v.

Martin **MAGNUSSON**, Commissioner, Maine Dep't of Corrections, Respondent, Appellee.

No. 98–1067.

United States Court of Appeals, First Circuit.

Heard May 6, 1999.
Decided May 24, 1999.

---

Schuyler G. Steele for appellant.

Charles K. Leadbetter, Assistant Attorney General, State of Maine, with whom Andrew Ketterer, Attorney General, and Nancy Torresen, Assistant Attorney General, were on brief, for appellee.

Before SELYA, Circuit Judge, COFFIN, Senior Circuit Judge, and POLLAK,* Senior District Judge.

SELYA, Circuit Judge.

Over a decade ago, a Maine jury found petitioner-appellant Jeffrey L. Libby guilty of murdering his grandfather, and a state trial judge sentenced him to serve sixty years in prison. Since then, Libby has attempted on several occasions to mount collateral attacks on his conviction. The latest in this series of attempts took place against the backdrop of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104–132, 110 Stat. 1214 (Apr. 24, 1996) (codified in scattered sections of 28 U.S.C.), and gave rise to the instant appeal. We retrace the pertinent portions of the case's chronology.

The petitioner filed his first federal habeas petition on December 8, 1993. *See* 28 U.S.C. § 2254 (pre-AEDPA version). The district court dismissed it, and the petitioner did not appeal. He filed another pre-

AEDPA section 2254 petition on October 11, 1995. This petition addressed only Eighth Amendment issues anent the conditions of his confinement. It, too, was dismissed. The petitioner subsequently filed the underlying habeas corpus application— his third petition under 28 U.S.C. § 2254, but only the second such petition that attacked his conviction—on October 27, 1997 (some 18 months after Congress enacted the AEDPA). The district court, acting upon the recommendation of a magistrate judge, dismissed this petition on two grounds: first, that it was untimely under the AEDPA; and second, that it did not meet the requirements for consideration of a second or successive habeas petition. This appeal followed.

I

■ The AEDPA provides that "[b]efore a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." 28 U.S.C. § 2244(b)(3)(A). Under this paradigm, a second or successive habeas petition is not a matter of right—and the gatekeeping function belongs to the court of appeals, not to the district court. *See Felker v. Turpin,* 518 U.S. 651, 661, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996); *Pratt v. United States,* 129 F.3d 54, 57 (1st Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1807, 140 L.Ed.2d 945 (1998). Thus, if the AEDPA applied to Libby's 1997 offering, he was required to ask this court for prior authorization to proceed in the district court. He did not do so. Instead, he took the position that the AEDPA did not apply at all, and filed his 1997 petition directly in the district court.

■ The district court accepted jurisdiction to review Libby's petition on this basis, but determined that the AEDPA did apply and that, under it, Libby's petition

* Of the Eastern District of Pennsylvania, sitting by designation.

was time-barred. Technically, the district court, after determining that the AEDPA applied, might have dismissed the petition for want of an authorizing order, or, alternatively, transferred the matter to this court. When the AEDPA is in play, the district court may not, in the absence of proper authorization from the court of appeals, consider a second or successive habeas application. *See Graham v. Johnson,* 168 F.3d 762, 772 (5th Cir.1999); *Lopez v. Douglas,* 141 F.3d 974, 975–76 (10th Cir.) (per curiam), *cert. denied,* —— U.S. ——, 119 S.Ct. 556, 142 L.Ed.2d 462 (1998); *Hill v. Hopper,* 112 F.3d 1088, 1089 (11th Cir.) (per curiam), *cert. denied,* 520 U.S. 1203, 117 S.Ct. 1571, 137 L.Ed.2d 714 (1997). Here, however, no useful purpose would be served by forcing the petitioner to retreat to square one and wend his way anew through the jurisdictional maze. We have the power, in the exercise of our informed discretion, to treat this appeal as if it were, in whole or in part, a motion for authority to proceed under section 2244(b)(3)(A), *see Lopez,* 141 F.3d at 976; *Pratt,* 129 F.3d at 58, and we will do so.

## II

■ We turn now to the threshold question of whether the AEDPA applies to the underlying habeas application. To support his contention that it does not, the petitioner offers the by-now-familiar argument that the AEDPA, as a general matter, has an impermissible retroactive effect. Just eight days after the magistrate judge filed his report and recommendation in this case, we directly confronted—and squarely rebuffed—this very proposition in much the same context as here presented. *See Pratt,* 129 F.3d at 58 (holding that the AEDPA applies to a second habeas petition filed after the new law's effective date, even though the petitioner had filed his first petition before that date).[1] Other courts of appeals have joined us in so

holding. *See Vancleave v. Norris,* 150 F.3d 926, 927 (8th Cir.1998); *In re Davenport,* 147 F.3d 605, 608 (7th Cir.1998). Because the petitioner's arguments, for the most part, are not qualitatively different from those that we found wanting in *Pratt,* we reject them out of hand. We add only a decurtate comment, necessitated by the fact that here, unlike in *Pratt,* the petitioner musters an ex post facto challenge.

■ History teaches that the Ex Post Facto Clauses, U.S. Const. art. 1, § 9, cl. 3, and art. 1, § 10, cl. 1, should be construed narrowly. *See Collins v. Youngblood,* 497 U.S. 37, 41–52, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990). Thus, an ex post facto law is one that punishes, as a crime, an act which was innocent when committed; or which, after a crime has been perpetrated, changes the punishment and renders it more onerous; or which strips away a defense that was available at the time when the defendant committed the crime. *See Lynce v. Mathis,* 519 U.S. 433, 440–41, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997); *California Dep't of Corrections v. Morales,* 514 U.S. 499, 504–06 & n. 3, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995); *Beazell v. Ohio,* 269 U.S. 167, 169–70, 46 S.Ct. 68, 70 L.Ed. 216 (1925); *Hamm v. Latessa,* 72 F.3d 947, 956–57 (1st Cir.1995).

The AEDPA's standards governing the filing of second or successive habeas petitions do not, retrospectively or otherwise, criminalize past actions that were considered innocent when performed by one in the petitioner's situation, render such an individual's punishment more oppressive, or deprive him of any previously available legal defense. To the contrary, these provisions simply limit the circumstances under which the petitioner (or one similarly situated) may collaterally attack his conviction. It is, therefore, pellucid that application of the AEDPA's requirements to the

---

1. To be sure, we recognized the possibility that, in a given case, a petitioner might escape the rigors of the AEDPA because he had reasonably and detrimentally relied on a supplanted legal regime in formulating his habeas corpus strategy. *See Pratt,* 129 F.3d at 58–60. We address that question, as it applies to Libby, in Part V, *infra.*

instant petition cannot work an ex post facto violation. *Accord Hatch v. Oklahoma*, 92 F.3d 1012, 1014 (10th Cir.1996) (concluding that the AEDPA's provisions addressing second or successive petitions do not infract the Ex Post Facto Clause contained in art. 1, § 9).

## III

Having determined that the AEDPA controls in this case, we treat what remains of the appeal as a motion for leave to proceed with the prosecution of a second or successive habeas petition. From that coign of vantage, we consider whether Libby satisfies the strictures that the AEDPA imposes.

■ The respondent, Maine's Commissioner of Corrections, maintains that authorization to proceed should be refused because the proposed petition is out of time. As framed, this thesis posits that the limitation period for filing a habeas petition under the AEDPA is one year, *see* 28 U.S.C. § 2244(d); that where, as here, this period expired prior to AEDPA's effective date, potential applicants have a one-year "grace period" within which to file; that Libby, whose conviction became final sometime in 1988, had only one year after April 24, 1996, within which to seek authorization to proceed with a neoteric habeas petition; and that, because he filed nothing until October 27, 1997, he should not be allowed to go forward. The lower court adopted this rationale and dismissed the petition.

We agree that section 2244(d) imposes a general one-year limitation period for filing habeas petitions, and—although this court has not yet spoken directly to the point—that federal courts generally have recognized a one-year grace period following the AEDPA's enactment in order to allay retroactivity concerns associated with certain habeas applications arising out of preexisting convictions. *See, e.g., Nichols v. Bowersox*, 172 F.3d 1068, 1073 (8th Cir. 1999) (en banc); *Wilcox v. Florida Dep't of Corrections*, 158 F.3d 1209, 1211 (11th Cir. 1998); *see also Flanagan v. Johnson*, 154 F.3d 196, 199–200 (5th Cir.1998) (collecting cases). But this limitation period works differently in respect to second or successive petitions, and the respondent's thesis mis-identifies the correct triggering date for such petitions. That bevue, in turn, defeats the respondent's contention that the instant petition was barred automatically one year after the AEDPA became law. We explain briefly.

Section 2244(d) provides four different end points for measuring the AEDPA's one-year limitation period. The first is "the date on which the judgment [in the underlying criminal case] became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Because strict application of this one-year rule would have extinguished the rights of many state prisoners to file even their first habeas petitions, federal courts generally have construed the statute, with respect to persons in state custody whose convictions had become final more than one year before AEDPA's date of enactment, to mean that the one-year limitation period runs from that (enactment) date. *See Flanagan*, 154 F.3d at 199–200 (collecting cases); *Hoggro v. Boone*, 150 F.3d 1223, 1225–26 (10th Cir.1998) (same).

Although this grace period is a logical solution to the retroactivity problem that would be raised by mechanical application of a one-year limitation period to convictions that had long before become final, indiscriminate application of the grace period construct to second or successive petitions would contravene both the letter and the spirit of the statute. After all, the time when a conviction becomes final is only one of four triggering events that Congress described in section 2244(d)(1). A second end point—not at issue here—involves the date on which "the impediment to filing an application created by State action in violation of the Constitution

or laws of the United States is removed, if the applicant was prevented from filing by such State action." 28 U.S.C. § 2244(d)(1)(B). The last two end points comprise the date on which a new, retroactively applicable constitutional right was initially recognized by the Supreme Court, *see* 28 U.S.C. § 2244(d)(1)(C), and "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of reasonable diligence," *id.* at § 2244(d)(1)(D). In our view, the respondent's single-minded emphasis on the one-year grace period impermissibly overlooks the import of these last two end points as a means of measuring the applicable limitation period.

The text and structure of section 2244 make manifest the significance of these end points. There are two ways in which a habeas petitioner can prevail on a second or successive petition. One is by showing that his claim "relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court." *See id.* at § 2244(b)(2)(A); *see also Rodriguez v. Superintendent, Bay State Correctional Ctr.*, 139 F.3d 270, 275–76 (1st Cir.1998). The other is by demonstrating that the factual predicate of his newly asserted claim was not readily discoverable at an earlier date *and* that, if proven, these new facts will suffice "to establish by clear and convincing evidence" that, but for the constitutional error, no reasonable factfinder would have found the petitioner guilty of the charged crime. *See* 28 U.S.C. § 2244(b)(2)(B). The precise textual correspondence between the requirements for the substantive showing necessary to sustain a second or successive petition and the AEDPA's temporal end points sends a strong signal that the limitation period for a second or successive petition almost always will be triggered by the occurrence of one of the two events (the most prominent exception being if the

triggering event occurred prior to the AEDPA's effective date).

That this is the proper interpretation of the statute is made evident by the anomalies that would result were we to adopt the respondent's reading. Take the example of a state prisoner (whom we shall call "A") whose conviction was final in 1994 and who had unsuccessfully sought habeas relief in 1995. If, in 1998, the Supreme Court recognized a new and retroactively applicable constitutional right, A, under the respondent's construction, would be barred from prosecuting a second habeas application even if he acted on the very day that the Supreme Court announced its decision. This result would make a mockery of Congress's manifest intent to provide relief in such circumstances—an intent evinced not only by the explicit language of section 2244(b)(2)(A), but also by the directive that the limitation period "shall run from the latest of" the four triggering events limned in the statute. *See* 28 U.S.C. § 2244(d)(1). In other words, the respondent's gloss subtracts from what little Congress has given to state prisoners who aspire to file second or successive habeas petitions and thereby undercuts subsections 2244(d)(1)(C)-(D). We ordinarily read statutes in a manner that gives meaning to every word. *See Walters v. Metropolitan Educ. Enterps., Inc.*, 519 U.S. 202, 207–08, 117 S.Ct. 660, 664, 136 L.Ed.2d 644 (1997); *United States v. Ven–Fuel, Inc.*, 758 F.2d 741, 751–52 (1st Cir.1985). Because the respondent's reading of the AEDPA renders entire subsections nugatory, it cannot be countenanced.

Under the AEDPA, then, the rule is as follows. A state prisoner ordinarily must bring his first federal habeas petition within one year of the date on which his conviction became final (or, if the grace period applies, within that period).[2] But, this

---

**2.** This generality is, of course, subject to the tolling provisions limned in section 2244(d)(2), to the provisions (where applicable) of section 2244(d)(1)(B) (concerning instances in which state action has created impediments to filing a habeas application), to the provisions (where applicable) of sections 2244(d)(1)(C)-(D), and perhaps—we reserve

time frame often will prove irrelevant for the purpose of measuring the timeliness of a second or successive habeas petition. Such a petition will be deemed timely if filed within one year of the occurrence of any of the triggering events described in section 2244(d)(1). It follows, therefore, that if a one-year grace period applies at all to a second or successive petition, it does so only in cases in which the year extends, rather than truncates, the limitation period. *See* 28 U.S.C. § 2244(d)(1).

## IV

Having fashioned a yardstick by which to measure the appropriate triggering date for prescriptive purposes vis-à-vis second or successive habeas petitions, we shift directions. In most settings, litigants invoke the statute of limitations as an affirmative defense, *see, e.g.,* Fed.R.Civ.P. 8(c), and this principle functions much the same way in habeas corpus jurisprudence. Consequently, there is no need to consider the viability of a limitations defense unless and until the habeas petitioner has demonstrated that he has met the stringent criteria outlined in section 2244(b)(2) for authorization to proceed with a second or successive petition. Libby's application, on its face, fails to achieve those benchmarks.

The AEDPA provides that courts of appeals "may authorize the filing of a second or successive [habeas] application" if—but only if—the application "makes a prima facie showing" that satisfies the requirements of section 2244(b). *See* 28 U.S.C. § 2244(b)(3)(C). These requirements effectuate a "modified res judicata rule," *Felker,* 518 U.S. at 664, 116 S.Ct. 2333, under which a habeas petitioner, as a general matter, may neither resurrect claims vetted in a previous application nor prosecute claims that reasonably could have been raised in, but were omitted from, a prior application. The only two exceptions to this regime are those to which we adverted earlier: a repeat habeas applicant may proceed on a previously unasserted claim that is based on either (a) the announcement by the Supreme Court of a new, retroactively applicable principle of constitutional law, *see* 28 U.S.C. § 2244(b)(2)(A), or (b) some recently unearthed exculpatory evidence that previously could not have been discovered through the exercise of due diligence, *see id.* at § 2244(b)(2)(B). If an applicant brings his petition within the narrow confines of one of these exceptions, he is entitled to have a timely second or successive petition considered by the district court; otherwise, he is not.

■ Libby's petition wilts in the hot glare of this legal regime. He attempts to advance eight separate claims. Four of these are taken verbatim, or nearly so, from his initial habeas application,[3] filed on December 8, 1993, and dismissed on November 7, 1994. These claims fall squarely within the prohibition of section 2244(b)(1) (stating that "[a] claim presented in a second or successive habeas corpus application ... that was presented in a prior application shall be dismissed"), and therefore need not be discussed.

■ Of the remaining four claims, three consist entirely of allegations of trial error: that the trial court improperly admitted evidence of "habit or routine practice," that the jury instructions were problematic, and that the evidence was inadequate to

---

the question—to other equitable considerations, *see Miller v. New Jersey State Dep't of Corrections,* 145 F.3d 616, 617–18 (3d Cir. 1998) (holding that section 2244(d)(1)'s one-year requirement is a statute of limitations subject to equitable tolling, not a jurisdictional bar); *Miller v. Marr,* 141 F.3d 976, 978 (10th Cir.) (same), *cert. denied,* —— U.S. ——, 119 S.Ct. 210, 142 L.Ed.2d 173 (1998).

**3.** These claims comprise allegations (1) that the prosecution introduced evidence obtained from an unlawful search, (2) that the state trial court admitted into evidence an illegally obtained statement, (3) that the court allowed a pathologist to testify as to matters not disclosed in discovery, and (4) that the state did not adequately show the existence of a corpus delicti.

sustain a conviction. Although these assertions did not appear in Libby's first habeas petition, they do not justify a second or successive petition because they do not satisfy the requirements of section 2244(b)(2). As framed, the alleged errors have nothing to do with freshly discovered evidence, and the petitioner does not direct us to any new, retroactively applicable rule of constitutional law that might cast any or all of these theories in a materially different light.

■ The last of the petitioner's claims is, on the surface, a different breed of cat. He contends that the state trial court "ignor[ed] due process [and] refused to allow new evidence which had not been discoverable prior to trial and which was highly material as to key trial issues." Closer perscrutation of the accompanying factual allegations, however, shows that this claim, too, is deficient.

The "new evidence" that Libby cites is testimony by a certain Edmund Winslow who, according to the petition, was ready to "provide crucial alibi evidence" that would have placed Libby "in a different location at the time of the homicide." This witness, the petition asserts, "only became known to [Libby] after trial and by a lucky circumstance." The petition further states that "the [state trial] court refused a new trial based upon this witness's crucial and previously undiscoverable testimony." We learn from the record that this last reference is to Libby's motion for new trial, filed in the Kennebec County Superior Court on March 21, 1989 (in which he noted that he had a new alibi witness).

The first question that the AEDPA directs us to ask when a habeas petitioner makes a claim of newly discovered evidence on a second or successive petition is whether the "factual predicate for the claim could ... have been discovered previously through the exercise of due dili-

gence" such that it could have been included in the first habeas application. 28 U.S.C. § 2244(b)(2)(B)(i). Plainly, Libby knew that Winslow was a potential alibi witness by March 1989—some four years before he submitted his original application for federal habeas relief. Since the evidence already had been discovered, the claim should have been brought the first time around.[4]

The petitioner strives to avoid this conclusion by asseverating that the shortcomings in his initial application are the product of the restrictive conditions of confinement which he claims prevailed for many years. Insofar as this argument is tailored to justify the filing of his application after the one-year grace period, it is irrelevant because it incorrectly presupposes that he has made the requisite prima facie case for proceeding with a second or successive habeas petition. And even if we treat the argument more broadly, it fails to furnish a basis for relief.

The eight alleged errors that the petitioner now seeks to pursue were known to him (or, at least, knowable by him) before he filed his first section 2254 petition. Indeed, most of them are apparent from the face of the trial record—and the one exception is apparent from the face of the petitioner's 1989 motion. As previously mentioned, four of the eight alleged errors were presented in Libby's initial habeas petition—and it is surpassingly difficult to conceive of a reason why we should excuse his failure to proffer the other four. The presumption behind the AEDPA appears to be that if a convict is able to file a habeas corpus application, then he is able to include in it all claims that are within his ken at the time of filing. While this presumption is rebuttable, the petitioner points to no statutory provision that would permit him the leniency that he seeks in

---

4. If more is needed—and we do not think that it is—we add that, in all events, the petitioner completely fails to indicate how any of Winslow's testimony, "if proven and viewed in light of the evidence as a whole," 28 U.S.C. § 2244(b)(2)(B)(ii), might suffice to establish, clearly and convincingly, that no rational trier of fact could have found him guilty.

the circumstances of this case. Moreover, even were we to recognize an exception, we certainly could not invoke it to benefit a state prisoner who, like Libby, fails to identify any fact-specific causal nexus between the peculiarities of his confinement and his omitted claims.

## V

■ There is one further matter. In *Pratt,* we held that the AEDPA's requirements governing second or successive petitions do not, as a general matter, violate non-retroactivity tenets when applied to persons whose convictions were final before the AEDPA's effective date. *See Pratt,* 129 F.3d at 58. We recognized, however, that in a given case a habeas petitioner might be able to show that these provisions have an impermissible retroactive impact on one or more of his claims. *See id.* at 58–60 (discussing possibility of "mousetrapping").

Libby tries to embrace this exception, but the circumstances place it well beyond his grasp. The *sine qua non* for the exception is a showing that the petitioner detrimentally relied on the legal *status quo ante. See id.* at 59. In this context, an assertion of reliance must be objectively reasonable—and one easy way to test the objective reasonableness of a particular assertion is to determine whether the proponent would have prevailed on a second or successive petition under the former regime. *See id.* Libby can make no such showing.

■ But for the enactment of the AEDPA, Libby's case would be governed by the abuse of the writ doctrine described in *McCleskey v. Zant,* 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). *See Pratt,* 129 F.3d at 59. That doctrine compels a habeas petitioner to show both cause and prejudice. *See McCleskey,* 499 U.S. at 497, 111 S.Ct. 1454; *Pratt,* 129 F.3d at 59–60. The petitioner cannot clear

even the first of these hurdles. Four of his claims were raised unsuccessfully in his 1993 habeas petition, and he had no reasonable excuse for failing to raise then and there the other four claims that he advanced in his 1997 petition; he has long been aware of the factual predicate undergirding each such claim. This concatenation of events, without more, dooms the petitioner's quest. *See McCleskey,* 499 U.S. at 497–502, 111 S.Ct. 1454 (holding that a habeas petitioner cannot satisfy the "cause" requirement where the evidence upon which he relies would have been available through the exercise of reasonably diligent fact gathering).[5]

The only remaining possibility for relief is if the newly presented claims persuasively suggest a fundamental miscarriage of justice. *See id.* at 502, 111 S.Ct. 1454. This exception is rarely found applicable, and neither the factual allegations in Libby's petition nor the arguments in his brief give any indication that we are confronted with such an extraordinary situation.

We need go no further. There is no basis under the AEDPA for allowing Libby to file a further habeas petition.

***We affirm the district court's dismissal of the petitioner's application for habeas corpus relief. Additionally, we treat this appeal, in part, as a motion for permission to file a second or successive habeas petition. So viewed, we deny the motion.***

**5.** Inasmuch as Libby stumbles at the "cause" hurdle, we need not consider the question of prejudice. *See McCleskey,* 499 U.S. at 502, 111 S.Ct. 1454.