**Daniel TAVARES, Petitioner,**

v.

**Commonwealth of MASSACHUSETTS, Respondent.**

**No. CIV. A. 99–10911–WGY.**

United States District Court, D. Massachusetts.

July 12, 1999.

Daniel D. Tavares, F.C.I. Beckley, Beaver, WV, Pro se.

## MEMORANDUM AND ORDER

YOUNG, Chief Judge.

On April 26, 1999, the Petitioner, Daniel Tavares ("Tavares"), filed his self-prepared Petition for Writ of Error *Coram nobis*, seeking the imposition of a state sentence in connection with 14 separate cases placed on file by the Commonwealth of Massachusetts in 1988. Tavares claims that the actual imposition of sentences by the Massachusetts district courts would then enable him to appeal the sentences to a jury of six pursuant to the *de novo* system which was in effect at the time of the "guilty—filed" dispositions in 1988.

More specifically, Tavares now seeks to have the state cases which were "placed on file" (a suspension of active proceedings but not a final disposition) converted to final judgments that are appealable. Tavares claims that "[b]ecause the cases were filed and had in no way affected [him], he has never caused them to be reactivated. Now, however, the cases are being used by the U.S. Government in [his] federal case to most substantially enhance his federal sentence." Pet'r. Compl. at 5. Tavares also claims to have exhausted all state remedies in connection with this issue, his appeals having been denied.

In sum, Tavares claims to be caught in a procedural "Catch–22." Back in 1988, when he received the 14 "guilty—filed" dispositions in the Massachusetts district courts, he naturally made no objection because such dispositions carried no sanction against him. Convicted in this Court of serious firearms violations, he found his sentence enhanced by considerations of certain of the Massachusetts "guilty—filed" dispositions. *United States v. Tavares*, 93 F.3d 10, 16–17 (1st Cir.1996). Tavares recognizes that if he can have a sufficient number of these Massachusetts "guilty—filed" dispositions vacated, he will be entitled to re-sentencing in this Court. *United States v. Pettiford*, 101 F.3d 199, 201–02 (1st Cir.1996). Under Massachusetts law, however, Tavares thinks a "guilty—filed" disposition can be reactivated only by the Commonwealth, not a defendant in his position.[1]

Stymied, Tavares reaches for the writ of error *coram nobis*. The writ of error *coram nobis* was a common law mechanism used to bring before the court errors of fact which had not been in issue at trial, but were material to the validity and regularity of the proceeding. *Spaulding v. United States*, 155 F.2d 919, 921 (6th Cir. 1946). According to Black's Law Dictionary, a writ of *coram nobis* is a

> procedural tool whose purpose is to correct errors of fact only, and its function is to bring before the court rendering the judgment matters of fact which, if known at time judgement was rendered, would have prevented its rendition.... The essence of the common law remedy of coram nobis is that it is addressed to the very court which renders the judgment in which injustice is alleged to have been done, in contrast to appeals or review directed to another court; the words "coram nobis," meaning "our court," as compared to the common-law

---

1. Tavares may well be wrong in this assumption. *Compare Commonwealth v. Maloney*, 145 Mass. 205, 210, 13 N.E. 482 (1887) (placing a conviction on file "leaves it within the power of the court at any time, upon the motion of either party to bring the case forward, and pass any lawful order or judgment thereon.") *with Commonwealth v. Carver*, 224 Mass. 42, 44, 112 N.E. 481 (1916) ("Unless and until the prosecuting attorney shall move for sentence there is no occasion to pass upon the conduct of the forgery trial [which had been placed on file]"). *See generally DuPont v. Superior Court*, 401 Mass. 122, 123, 514 N.E.2d 1086 (1987) (Hennessey, C.J.); *Commonwealth v. Bianco*, 390 Mass. 254, 256, 454 N.E.2d 901 (1983) (Nolan, J.); *Marks v. Wentworth*, 199 Mass. 44, 45, 85 N.E. 81 (1908).

writ of "coram vobis," meaning "your court," clearly point this up.

Black's Law Dictionary 337 (6th ed.1990) (internal citations omitted). Related to this concept is the writ of *audita querela:*

> The name of a common law writ constituting the initial process in an action brought by a judgment defendant to obtain relief against the consequences of the judgment on account of some matter of defense or discharge arising since its rendition and which could not be taken advantage of otherwise.

*Id.* at 131 (citations omitted); *see also* Fed.R.Civ.P. 60(b).

*Coram nobis* is thus used to attack a judgment that is infirm at the time it was rendered for reasons which later are discovered, as compared with *audita querela,* which is used to attack a judgment that was correct at the time it was rendered but is rendered infirm by matters that arise after its rendition. *See United States v. Reyes,* 945 F.2d 862 (5th Cir. 1991).

Writs of *coram nobis* and *audita querela* have been formally abolished. *See* Fed. R.Civ.P. Rule 60(b). Despite their abolition in the **civil** context, however, courts have held that the All Writs Act, 28 U.S.C. § 1651, appears to have preserved the use of these writs "in very limited circumstances with respect to **criminal** convictions." *Tran v. United States,* 45 F.Supp.2d 157, 159–60 (D.P.R.1999) (Gierbolini, J.) (emphasis added); *see also United ed States v. Morgan,* 346 U.S. 502, 506 n. 4, 74 S.Ct. 247, 98 L.Ed. 248 (1954); *United States v. Holder,* 936 F.2d 1, 5 (1st Cir.1991).

▮ This avenue is used "to cure the freakish case rather than [as] a readily available remedy to cure the mundane because vacation of a longstanding judgment [should] be a jealously guarded exception rather than the general rule." *Tran,* 45 F.Supp.2d at 160–61 (internal citations omitted). The writ is not available in federal courts for errors of law, but for errors

of fact which "are of such fundamental character as to render the proceeding itself irregular and invalid." *Spaulding,* 155 F.2d at 921; *see also Lowery v. United States,* 956 F.2d 227, 228–29 (11th Cir. 1992). Requests for a writ of *coram nobis* have been sought in cases where the sentence has expired and the petitioner is no longer in custody. *See Tran,* 45 F.Supp.2d at 159–60; *see also United States ex rel Gee v. Helman,* No. 97C5815, 1998 WL 177952, at *2 (N.D.Ill., April 10, 1998); *Woodson v. Attorney Gen. of the State,* No. C 97–353 EFL, 1997 WL 68516, at *2 (N.D.Cal. Feb.6, 1997); *Telink, Inc. v. United States,* 24 F.3d 42, 45 (9th Cir. 1994).

The All Writs Act provides: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a) (emphasis added). This has been paraphrased to indicate that the district courts are empowered to issue writs "in aid of their jurisdiction . . . ." *Tran,* 45 F.Supp.2d at 159–60. Thus, the All Writs Act does not confer jurisdiction. It can only be invoked in aid of jurisdiction the court already has. *See Benson v. State Bd. of Parole & Probation,* 384 F.2d 238, 239 (9th Cir.1967).

▮ In the present case, unlike other federal cases dealing with writs of *coram nobis,* Tavares is seeking to challenge **state** court convictions rather than his **federal** conviction. Thus, he must make his challenge directly to the court which originally handled the criminal case. *See United States ex rel Gee,* 1998 WL 177952, at *3 (federal court has power to vacate one of its judgments of conviction but cannot be used to set aside judgment rendered by another court).

▮ Tavares has mistaken his remedy. There is no jurisdiction in a federal district court to entertain a petition for writ of *coram nobis* with respect to challenged

state convictions. *See Dillard v. Chandler,* 142 F.3d 433 (6th Cir.1998) (federal courts may only intervene with state judicial proceedings to correct injuries of constitutional dimensions; writ of *coram nobis* must be brought to court pronouncing judgment); *Woodson,* 1997 WL 68516, at *2 ("As petitioner is attempting to challenge the validity of a state conviction, the writ of error *coram nobis* is not an available remedy for relief."); *Lowery,* 954 F.2d 422, 422–23; *Madigan v. Wells,* 224 F.2d 577, 578 n. 2 (9th Cir.1955) (writ of error can only issue to aid jurisdiction of court in which conviction was had) (subsequent history omitted); *Spaulding,* 155 F.2d at 920–21.

■ Moreover, writs of *coram nobis* and *audita querela* are not available to a petitioner when other remedies exist, such as a motion to vacate sentence under 28 U.S.C. § 2255 or, by analogy, a petition for *habeas corpus* under 28 U.S.C. §§ 2241 or 2254. *See, e.g. Tran,* 45 F.Supp.2d at 160–61. Here, Tavares has already filed an application under 28 U.S.C. § 2254 and it has been denied, *see Tavares v. Commonwealth of Massachusetts,* No. 99–10016 (D.Mass. Jan. 4, 1999), as has his earlier petition to vacate his sentence filed under 28 U.S.C. § 2255, *see Tavares v. Rardin,* No. 97–12760 (D.Mass. Jan. 6, 1998).[2]

The [Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (Apr. 24, 1996) (codified in scattered sections of 28 U.S.C.),] provides that "[b]efore a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." 28 U.S.C. § 2244(b)(3)(A). Under this paradigm, a second or successive habeas petition is not a matter of right—and the gatekeeping function belongs to the court of appeals, not to the district court. *See Felker v. Turpin,* 518 U.S. 651, 661, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996); *Pratt v. United States,* 129 F.3d 54, 57 (1st Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1807, 140 L.Ed.2d 945 (1998).

*Libby v. Magnusson,* 177 F.3d 43, 45–46 (1st Cir.1999). Accordingly, this Court is without subject matter jurisdiction to entertain this case, no matter the arcana with which Tavares cloaks it.

Tavares' petition is, therefore, dismissed for lack of subject matter jurisdiction.

2. Indeed, since his incarceration, Tavares has become an active litigant in this district. *See Tavares v. Maloney,* No. 99–10693 (D. Mass. filed March 31, 1999) (Saris, J.) (section 1983 claim pending); *Tavares v. Rardin,* No. 97–12760 (D.Mass. Jan. 6, 1998) (Young, J.) (section 2255 petition dismissed as an abuse of the writ); *Tavares v. Rardin,* No. 97–11086 (D.Mass. May 21, 1997) (Young, J.) (section 2241 petition summarily dismissed as an abuse of the writ in view of prior proceedings); *Tavares v. Readon,* No. 96–12644 (D.Mass. Jan. 24, 1997) (Young, J.) (section 2241 petition denied as moot); *Tavares v. Foreman,* No. 96–10146 (D.Mass. Aug. 6, 1996) (O'Toole, J.) (case closed because Plaintiff lost contact with court); *Tavares v. Foreman,* No. 96–10144 (D.Mass. Aug. 6, 1996) (O'Toole, J.) (section 1983 claim dismissed for failure to prosecute); *Tavares v. Foreman,* No. 96–10143 (D.Mass. Aug. 6, 1996) (O'Toole, J.) (section 1983 claim closed because Plaintiff's whereabouts unknown); *Tavares v. United States,* 914 F.Supp. 732 (D.Mass.1996) (Young, J.) (section 2255 petition dismissed as premature); *Tavares v. Foreman,* No. 96–10147 (D.Mass. Jan. 26, 1996) (O'Toole, J.) (section 1983 claim dismissed because no arguable legal basis for claim); *Tavares v. Foreman,* No. 96–10145 (D.Mass. Jan. 26, 1996) (O'Toole, J.) (section 1983 claim dismissed because no arguable legal basis for claim); *Tavares v. Flynn,* No. 94–11518 (D.Mass. Oct. 17, 1995) (O'Toole, J.) (section 1983 claim dismissed for failure to make service).

Macarthur DENSON, Plaintiff,

v.

John MARSHALL, Jr. and Mark Powers, Defendants.

No. CIV. A. 98–11156–WGY.

United States District Court, D. Massachusetts.

July 12, 1999.

MacArthur Denson, South Walpole, MA, Pro se.

Ann M. McCarthy, Boston, MA, for John H. Marshall, Jr., Mark Powers, Defendants.

## MEMORANDUM AND ORDER

YOUNG, Chief Judge.

### I. *Introduction*

The plaintiff, Macarthur Denson ("Denson"), a practicing Muslim, is a state prison inmate housed at the Cedar Junction Massachusetts Correctional Institution in Walpole ("Cedar Junction"). Denson, brings this civil rights action against Cedar Junction Superintendent John Marshall, Jr. ("Marshall") and Cedar Junction Deputy Superintendent Mark Powers ("Powers") for violation of the Free Exercise Clause of the United States Constitution

and the Massachusetts Declaration of Rights.

## II. *Background*

Denson is serving a ten year disciplinary sentence in the Department Disciplinary Unit ("the Unit") at Cedar Junction for raping a female therapist at the Massachusetts Treatment Center on July 10, 1997. At the time of the attack, Denson was serving a prison term for a previous conviction of aggravated rape.

The Unit consists of inmates found guilty of serious and repetitive disciplinary offenses while in prison. *See* Marshall Aff. of Oct. 28, 1998 ("Marshall Aff. I") at ¶ 3. The Unit houses "the most violent, assaultive and disruptive inmates in the Commonwealth." *Id.* Inmates are sentenced to the Unit as a punitive measure in order to deter their own and other inmates' serious misconduct in the Commonwealth's prisons. *See id.* Consequently, the Unit is a restrictive environment. *See id.* While prisoners can earn certain privileges for good behavior such as telephone calls, social visits, and television, they do not have canteen privileges, except to buy postage stamps. *See id.* at ¶¶ 3, 4.

On April 23, 1998, Denson sent a letter to Marshall seeking special food arrangements in order to observe three religious fast days per month. *See* Pl. Mem., Ex. A. These fasts typically occur in the middle of the month and require observers to abstain from food and drink between sunrise and sunset. *See* Rahim Aff. at ¶ 6. Because Denson cannot purchase food at the canteen, he asked Marshall to replace his regular meals on fast days with the caloric equivalent of cereal, milk, bread, peanut butter and jelly that he can eat before and after daylight hours. *See* Pl. Mem., Ex. A. On May 19, 1998, Powers informed Denson that his request had been denied. *See id.* at Ex. B. Denson filed suit on June 6, 1998.

Both parties moved for summary judgment. In a Memorandum and Order, this Court (1) granted Marshall and Powers' motion on Denson's Religious Freedom Restoration Act claim and denied their motion on Denson's remaining claims, (2) ordered Marshall and Powers to comply with Denson's request or submit supplemental summary judgment materials within sixty days, and (3) declined to rule on Denson's motion pending further submissions by Marshall and Powers. *See Denson v. Marshall,* 44 F.Supp.2d 400, 403 (D.Mass.1999). Marshall and Powers submitted a supplemental motion for summary judgment on May 28, 1999, to which Denson responded with his own motion for summary judgment. These motions are presently before the Court.

## III. *Summary Judgment Standard*

Summary judgment is appropriate if, after reviewing the facts in the light most favorable to the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c).

## IV. *Discussion*

■ Prisoners do not forfeit all constitutional protections simply by virtue of their incarceration. *See Bell v. Wolfish,* 441 U.S. 520, 545, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). The Supreme Court has specifically held that inmates retain First Amendment protections, *see Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974), including the free exercise of religion, *see Cruz v. Beto,* 405 U.S. 319, 322 n. 2, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (per curiam).[1]

---

1. The Massachusetts Declaration of Rights, which offers parallel protection from government interference with the free exercise of religion, also applies to prisoners. *See Rash-*

*eed v. Dubois,* No. 96–4599, slip op. at 3 (Mass.Sup.Ct. Nov. 17, 1998) (Lopez, J.) (holding that prison officials could not pre-

---

clude a prisoner at Cedar Junction from wearing an Islamic pendent around his neck).