**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 15, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

MELVIN ELLIS HOLLY,

      Defendant-Appellant.

No. 11-7014
(D.C. No. 6:04-CR-00114-SPF-1)
(E.D. Okla.)

---

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

---

Before **BRISCOE,** Chief Judge, **ANDERSON** and **MURPHY**, Circuit Judges.

---

Melvin Holly, a federal prisoner appearing pro se, seeks a certificate of appealability (COA) in order to challenge the district court's denial of his motion for a writ of audita querela under the All Writs Act, 28 U.S.C. § 1651. The district court concluded that Holly's motion for a writ of audita querela was actually a motion for habeas relief pursuant to 28 U.S.C. § 2255, recharacterized the motion as such, and dismissed the motion for lack of jurisdiction. Because Holly has failed to satisfy the standards for the issuance of a COA, we deny his request and dismiss this matter.

---

[*] This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.

I

In August 2005, a federal jury convicted Holly on eleven counts of deprivation of rights under color of law in violation of 18 U.S.C. § 242; one count of making a false statement in violation of 18 U.S.C. § 1001; and one count of tampering with a witness in violation of 18 U.S.C. § 1512(a)(2)(C). The convictions all arose out of Holly's "sexual abuse of inmates, employees, and an employee's daughter" while he was a sheriff at the Latimer County Jail in Oklahoma. United States v. Holly, 364 F. App'x 471, 471 (10th Cir. 2010). Of Holly's eleven convictions under § 18 U.S.C. § 242 (deprivation of rights under color of law), five were for aggravated sexual abuse and six were for violation of another person's right to bodily integrity. The district court sentenced Holly to a total of 372 months' imprisonment.

Holly appealed his convictions, arguing that the district court improperly instructed the jury regarding the definition of aggravated sexual abuse. United States v. Holly, 488 F.3d 1298, 1299 (10th Cir. 2007). On June 12, 2007, we reversed four of Holly's deprivation of rights convictions due to improper jury instructions, but affirmed the fifth conviction, concluding that the district court's error was harmless. Id. at 1299-1300. Believing that the fifth conviction should have also been vacated, Holly filed a petition for a writ of certiorari, which the Supreme Court denied on April 14, 2008. See Holly v. United States, 128 S. Ct. 1870 (2008).

On October 24, 2008, Holly filed a § 2255 habeas petition, arguing that his convictions should be vacated because he received ineffective assistance of trial counsel

2

in violation of his Sixth Amendment rights. On September 17, 2009, the district court denied Holly's petition, concluding that his attorney's performance did not fall below an objective standard of reasonableness. Holly v. United States, Nos. CIV-08-404-F, CR-04-114-F, 2009 WL 3029603, *3-5 (E.D. Okla. Sept. 17, 2009). Holly then filed an application for a COA, which we denied on February 5, 2010, because Holly "fail[ed] to present any reasoned argument as to his ineffective assistance of counsel claims." Holly, 364 F. App'x at 472.

On March 7, 2011, Holly filed a motion for a writ of audita querela under the All Writs Act, 28 U.S.C. § 1651. The district court concluded that the motion was "in reality" a second § 2255 petition because Holly asked the court to "vacate the conviction and sentence for which he is currently in custody." ROA, Vol. 1 at 797. The district court further noted that under 28 U.S.C. § 2244(b)(3)(A), a defendant must receive authorization from this court in order to file a "second or successive" habeas petition. Id. Because Holly did not seek such authorization, the district court dismissed Holly's second habeas petition for lack of jurisdiction. Following the district court's order, Holly filed a notice of appeal and an application for a COA.

## II

A petitioner must obtain a COA in order to appeal a district court's denial of a habeas petition. 28 U.S.C. § 2253. A COA may be issued only upon a "substantial showing of the denial of a constitutional right." Id. § 2253(c)(2). Where a district court has rejected a petitioner's constitutional claim on the merits, the petitioner "must

3

demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

III

*1.    Recharacterization*

In his application for a COA, Holly alleges the district court erred in recharacterizing his motion for a writ of audita querela as a second motion for habeas relief under § 2255. A writ of audita querela is used to challenge "a judgment that was correct at the time rendered but which is rendered infirm by matters which arise after its rendition." United States v. Torres, 282 F.3d 1241, 1245 n.6 (10th Cir. 2002) (quoting United States v. Reyes, 945 F.2d 862, 863 n.1 (5th Cir. 1991)). But while a prisoner "may seek a writ of audita querela under the All Writs Act," it is well established that the writ is "'not available to a petitioner when other remedies exist, such as a motion to vacate sentence under 28 U.S.C. § 2255.'" Id. at 1245, 1245 n.6 (quoting Tavares v. Massachusetts, 59 F. Supp. 2d 152, 155 (D. Mass. 1999)). Thus, "a federal prisoner may not challenge a conviction or a sentence by way of a petition for a writ of audita querela when that challenge is cognizable under § 2255." Id. at 1245 (quoting United States v. Valdez-Pacheco, 237 F.3d 1077, 1080 (9th Cir. 2000)).

We conclude that the district court correctly recharacterized Holly's motion as a second motion for habeas relief and that it correctly dismissed the motion for lack of jurisdiction. We come to these conclusions because the challenge Holly raised to his convictions is clearly cognizable under § 2255. In his motion for a writ of audita querela,

4

Holly claimed that the district court "neglected to recognize" newly discovered evidence indicating he was wrongfully convicted. ROA, Vol. 1 at 707. We have long recognized that a petition for habeas relief may be sought based on newly discovered evidence. See, e.g., Spitznas v. Boone, 464 F.3d 1213, 1216 (10th Cir. 2006) (Claims relating to newly discovered evidence may be raised in a petition for habeas relief because they "assert . . . a federal basis for relief from the underlying conviction."). In addition, 28 U.S.C. § 2255(h), which sets forth the narrow grounds upon which a second or successive habeas petition may be based, specifically allows a defendant to bring a successive habeas petition based on newly discovered evidence. For these reasons, we conclude that the district court correctly construed Holly's motion for a writ of audita querela as a second habeas petition under § 2255. We also conclude that the district court properly dismissed Holly's motion for lack of jurisdiction.[1] See In re Cline, 531 F.3d 1249, 1251 (10th Cir. 2008) ("A district court does not have jurisdiction to address the merits of a second or successive [habeas] claim until this court has granted the required authorization.").

Holly also argues that he is entitled to a COA because the district court did not notify him of its intent to recharacterize his motion or give him the opportunity to withdraw it. In making this argument, Holly points out that we have held that district courts may not recharacterize pro se motions as § 2255 petitions unless (1) the defendant,

---

[1] We note that a district court may transfer a second or successive habeas petition directly to this court if the interests of justice warrant such a transfer. See In re Cline, 531 F.3d 1249, 1251 (10th Cir. 2008). Here, the district court declined to transfer Holly's petition, concluding that it was not filed in good faith. See id.

"with knowledge of the potential adverse consequences of such recharacterization, agrees to have the motion so recharacterized," or (2) the district court concludes "that the petitioner's motion can only be considered under § 2255 and offers the [petitioner] the opportunity to withdraw the motion rather than have it . . . recharacterized." United States v. Kelly, 235 F.3d 1238, 1242 (10th Cir. 2000); Torres, 282 F.3d at 1241 (internal quotation marks omitted). We adopted this rule because "[f]ederal prisoners are barred from attacking their federal convictions through second or successive § 2255 motions except in very limited circumstances" and we did not want district courts to "use[] up" a defendant's "one shot at attacking his convictions and sentence" by recharacterizing a motion as a petition for habeas relief. Kelly, 235 F.3d at 1241.

Holly's argument ultimately fails, however, because we made clear in United States v. Torres that the aforementioned rule applies only "where the recharacterized petition would have been the petitioner's *first* § 2255 petition." 282 F.3d at 1246 (emphasis in original). We came to this conclusion because the concern that "characterizing a petition as an initial § 2255 petition might prevent a prisoner from raising a legitimate claim in a subsequent § 2255 petition" does not apply when a petitioner filed a federal habeas petition prior to filing the motion subject to recharacterization. Id. Since Holly had previously filed a habeas petition, reasonable jurists would agree that the district court was not required to notify Holly of its intent to recharacterize his motion for a writ of audita querela.

6

*2. Second Habeas Petition*

We deny Holly's application for a COA because the district court properly recharacterized his motion as a second habeas petition and dismissed it for lack of jurisdiction. However, in the interest of judicial economy and in order to address Holly's claims on their merits, we will consider Holly's application for a COA as also seeking authorization to file a second habeas petition pursuant to 28 U.S.C. § 2244(b)(3)(A). In doing so, we first note that "[f]ederal prisoners are barred from attacking their federal convictions through second or successive § 2255 motions except in very limited circumstances." Kelly, 235 F.3d at 1241. These limited circumstances are: (1) newly discovered evidence that would establish that no reasonable juror would have found the defendant guilty; or (2) a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court. Coleman v. United States, 106 F.3d 339, 341 (10th Cir. 1997) (quoting 28 U.S.C. § 2255(h)). If the second or successive motion does not fall within these narrow constraints, it must be dismissed. Kelly, 235 F.3d at 1241.

Holly argues that his convictions should be vacated because (1) he was forced by prison officials to take Haloperidol prior to trial, thus rendering him incompetent to stand trial; (2) his due process rights were violated when his attorney created a conflict of interest by representing a fellow inmate in a separate trial; and (3) the district court failed to take into account newly discovered evidence indicating that Holly should not have been convicted.

We disagree with Holly's assertions and conclude, based on the requirements set

7

forth in 28 U.S.C. § 2255(h), that he is not entitled to file a second habeas petition.[2]

Holly's first two claims—that he was under the influence of drugs during trial and that his attorney represented him despite a conflict of interest[3]—easily fail because they cannot be raised in a second petition for habeas relief. 28 U.S.C. § 2255(h) clearly establishes that a defendant may bring a second or successive habeas petition only when there is newly discovered evidence or a change in constitutional law that applies retroactively. Because Holly's first two claims do not fall into these categories, they cannot be brought in a second habeas petition.

Holly's final assertion is that he is entitled to post-trial relief because the district court failed to take into account newly discovered evidence indicating that he was wrongfully convicted. Specifically, Holly alleges he is entitled to relief from his convictions because (1) Roberta Hughes, a dispatcher for the Latimer County Sheriff's Office, provided methamphetamine and an offer of one million dollars to any female

---

[2] Although we conclude Holly has not shown that he is entitled to file a second habeas petition, any subsequent habeas petition may nonetheless be time-barred under 28 U.S.C. § 2255(f)(1), which requires petitions to be filed within one year of the date the judgment of conviction becomes final. Holly's judgment of conviction became final on April 14, 2008 when the Supreme Court denied certiorari, and he did not file his "second" habeas petition until March 7, 2011. See Coleman v. United States, 106 F.3d 339, 341 (10th Cir. 1997) (the one-year limitations period set forth in § 2255(f) applies to successive petitions for habeas relief).

[3] We note that in Holly's initial habeas petition, he also claimed that his attorney represented him despite having a conflict of interest due to his representation of another prisoner. The prisoner named in Holly's first habeas petition, however, is different from the prisoner mentioned in his application for a COA. See Aplt. Br. at 9; Holly, 2009 WL 3029603 at *6.

8

inmate willing to testify against Holly; (2) Amber Helmert, an inmate and one of Holly's victims, admitted to receiving methamphetamine from Roberta Hughes; and (3) Skipper Kistler, an inmate and one of Holly's victims, testified that Holly never sexually assaulted her. In support of these assertions, Holly submitted to the district court transcripts from the depositions of these women, which were taken as part of Holly's victims' subsequent civil suit against Latimer County.

We conclude that Holly may not file a second habeas petition based on his claim of newly discovered evidence. First, we are skeptical that the evidence at issue is actually newly discovered because Holly was aware of at least some of the victims' civil depositions when he filed his first habeas petition in October 2008. The victims' civil depositions were taken in the spring of 2006, over two years prior to the date Holly first sought habeas relief. ROA, Vol. 1 at 768, 785. In addition, Holly argued in his initial habeas petition that his attorney was ineffective for not pointing out the "inconsistenc[ies] between the victims' testimony in civil depositions and their testimony in the criminal trial." Holly, 2009 WL 3029603, at *4. Thus, it appears that Holly knew of, and had access to, at least some of the deposition testimony that was taken in 2006 in preparation for the civil trial.

Second, even if Holly recently discovered the deposition testimonies of Kistler, Hughes, and Helmert, their testimonies do not support his claim for post-trial relief. Regarding the testimony of Skipper Kistler, Holly correctly notes that she testified that she never had sex with him. See ROA, Vol. 1 at 729. This fact, however, does not

9

undermine the validity of Holly's convictions because he was never indicted for aggravated sexual assault of Kistler. In count eight of the superseding indictment, the government charged Holly with deprivation of rights under color of law, not for aggravated sexual assault, but for touching Kistler inappropriately. Id. Vol. 1 at 181. We note that in both the criminal trial and her civil deposition, Kistler testified that Holly wrongfully touched her. Id. Vol. 1 at 729-30.

Holly also claims that "Sworn testimony by Civil Deposition" indicates that Roberta Hughes provided inmates with methamphetamine and an offer of one million dollars to any female inmate willing to testify against Holly. Aplt. Br. at 7. We have reviewed the deposition testimony Holly provided to the district court, and we find absolutely no evidence to support Holly's assertion that Hughes offered money or drugs to any inmate in exchange for her testimony against him. We do note that Hughes invoked the Fifth Amendment when asked whether she sold methamphetamine to inmates and that Deborah Hendricks, another female inmate, testified that Hughes supplied her with methamphetamine "a few times." ROA, Vol. 1 at 740-41, 750, 777. Nonetheless, the fact that Hughes may have been illegally selling drugs to inmates who testified against Holly does not indicate that she provided drugs to these inmates in exchange for their testimony. Thus, despite Holly's assertion to the contrary, Hughes' illegal conduct does not indicate that he is innocent of the crimes for which he was convicted.

Finally, Holly claims he recently discovered that Amber Helmert, an inmate and one of his victims, has been charged with possession of methamphetamine. According to

10

Holly, this fact indicates that he should not have been convicted of sexually assaulting Helmert. Having reviewed all of the exhibits, affidavits, and deposition testimony in the record, we find no evidence indicating that Helmert has been prosecuted for possession of methamphetamine. But even assuming Holly's allegations are true, Helmert's unlawful conduct does not indicate that Holly did not sexually assault her. Because we find no direct connection between Helmert's testimony against Holly at his criminal trial and any subsequent allegations of wrongdoing against Helmert, Holly has failed to establish that he is entitled to file a second habeas petition on this basis.

IV

Holly has filed a request to proceed on appeal *in forma pauperis*. We deny his request because he has not shown the "existence of a reasoned, nonfrivolous argument on the law and facts in support of the issues raised on appeal." DeBardeleben v. Quinlan, 937 F.2d 502, 505 (10th Cir. 1991).

V

Accordingly, Hunt's application for a COA is DENIED, his request for authorization to file a second habeas petition is DENIED, his request to proceed *in forma pauperis* is DENIED, and this matter is DISMISSED.

Entered for the Court

Mary Beck Briscoe
Chief Judge

11